OLSON, Respondent, vs. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.

*November 20—December 23, 1947.*

38

*Emmet McCarthy* of Marinette, for the appellant.

For the respondent there was a brief by *Lehner & Lehner, Adolph P. Lehner,* and *Howard N. Lehner,* all of Oconto Falls, and oral argument by *Howard N. Lehner.*

RECTOR, J.  At 9 o'clock in the evening on the outskirts of the village of Gillett the deceased's automobile, operated by his son Kenneth in a northerly direction on Highway 32, collided with a southbound car driven by Bernard Siech. The deceased was a front-seat passenger. He was not familiar with the operation of an automobile and the car was customarily driven by Kenneth. The weather was clear and the roadway was dry. Another car, driven by Eric Guth, was proceeding in a northerly direction ahead of the deceased's car. Kenneth attempted to pass the Guth car as both were going up a hill. He was operating the deceased's car in the west, or his left, lane of travel in the act of passing as he approached the top of the hill and collided with the Siech car. The deceased carried an automobile liability insurance policy issued by the appellant.

During the course of the trial Kenneth was called as a witness for the respondent and was asked if his father had said

anything to him after he had turned into the left lane. There was an objection to the question upon the ground that the subject matter constituted a communication with the deceased and was therefore incompetent under sec. 325.16, Stats., and the objection was sustained. Kenneth was then asked whether his father had made an outcry before the impact, whether he had heard his father's voice after he turned into the left lane and before the impact, and whether, if his father had spoken, he could have heard him. Kenneth answered, without objection, that his father had made no outcry and that he had not heard his father's voice, although he was in a position where he could have heard it. After verdict there were the usual motions for a new trial and for a change of answers in the special verdict. The court granted a new trial in the interests of justice under sec. 270.49, upon the ground that the jury's verdict was based exclusively upon Kenneth's testimony relating to the deceased's failure to object to the manner in which the car was being operated. It was the court's view that Kenneth was an incompetent witness under sec. 325.16 and his testimony should have been excluded had proper objection been made, and that in justice the verdict ought not to rest upon the failure to register proper objection to the testimony.

The argument in support of the court's conclusion is an ingenious one. Sec. 325.16, Stats., reads in part:

"No party or person in his own behalf or interest, and no person from, through or under whom a party derives his interest or title, shall be examined as a witness in respect to any transaction or communication by him personally with a deceased or insane person in any civil action or proceeding, in which the opposite party derives his title or sustains his liability to the cause of action from, through or under such deceased or insane person. . . ."

It is said that the subject matter of communications between the deceased and Kenneth is within the statute, *Waters v. Markham* (1931), 204 Wis. 332, 235 N. W. 797; that while

Kenneth is not joined as a party, he is an assured under the policy of insurance issued by the appellant; and that the appellant derives its liability from Kenneth's liability. Thus, the conclusion follows that Kenneth is a person under whom the appellant as a party derives its interest under the statute.

We find it unnecessary to determine whether these premises are sound since the respondent, the opposite party to which reference is made by the statute, did not derive her title to the cause of action from, through, or under the deceased. She does not sue as a personal representative upon a cause of action belonging to the estate of the deceased. She sues under a statute which vests in her a cause of action for the death of the deceased occasioned by the son's wrongful acts. The cause of action is created by the statute. It does not devolve from the deceased by virtue of the statute. *Topping v. St. Lawrence* (1893), 86 Wis. 526, 57 N. W. 365; *Brown v. Chicago & N. W. R. Co.* (1899) 102 Wis. 137, 77 N. W. 748, 78 N. W. 771.

Kenneth was competent to testify to the deceased's failure to protest and the court erred in granting a new trial upon the assumption that he was incompetent. We are of the view, however, that the interests of justice require a retrial and that the order of the trial court should not be disturbed.

The jury found that Kenneth was not acting as agent of the deceased at the time of the accident, and there is substantial evidence in support of its conclusion. The relationship between Kenneth and the deceased was therefore that of host and guest. A guest takes the host as he finds him, so far as skill and judgment are concerned, but he is entitled to assume upon entering the car that the host will obey the laws of the road. *Poneitowcki v. Harres* (1930), 200 Wis. 504, 228 N. W. 126. In summarizing the cases dealing with the rule Mr. Justice NELSON stated in *Knipfer v. Shaw* (1933), 210 Wis. 617, 246 N. W. 328, 247 N. W. 320, that three elements were present where assumption of risk was established. They are: (1) A hazard or danger inconsistent with the safety of

the guest; (2) knowledge or appreciation of the hazard by the guest; (3) acquiescence or a willingness to proceed in the face of the danger. It is the basis of the rule that a guest voluntarily assumes or acquiesces in a known danger or hazard. And where there is no knowledge of reckless habits a guest does not assume the risk of a particular negligent act unless it is continued long enough to enable him to protest and he fails to do so. *Rudolph v. Ketter* (1940), 233 Wis. 329, 289 N. W. 674.

The basic question is whether the deceased became aware of Kenneth's negligent driving and appreciated the hazard involved in time to effectively protest. There is no showing that Kenneth was habitually reckless to the deceased's knowledge or that he customarily was guilty of negligent acts of the character here involved. The evidence as to just what occurred is fragmentary and inconclusive. There were but two witnesses examined on this phase of the case, Kenneth and Mr. Siech. Siech said that he was driving his car up a hill and that as he reached the top he saw two cars abreast immediately ahead approaching from the opposite direction. One of these was the deceased's car driven by Kenneth, which was approaching in the west lane of traffic upon which Siech was proceeding southerly. The other was, of course, the Guth car.

Kenneth's testimony was confused. He said he was going about thirty-five miles per hour when he turned out to pass at a point five or six hundred feet short of the point of collision. He said the Guth car was about one hundred feet ahead and estimated its speed to be about the same as that at which he was proceeding. Under considerable pressure and rather reluctantly he estimated that he drove alongside the Guth car for approximately three hundred feet immediately prior to the collision. If we assume that he was six hundred feet from the top of the hill at the time he first turned into the left lane and that he drove the last three hundred feet alongside the Guth car, he would have covered the first three hundred feet while the Guth car traveled two hundred feet but both would

have traveled the last three hundred feet abreast. If Kenneth had been traveling enough faster than the Guth car to overtake it in three hundred feet, he would have passed it and would have been one hundred feet ahead of it at the end of the next three hundred feet, if both cars had maintained the same rate of speed. It is not reasonable to suppose that, having drawn abreast of the Guth car at the end of the first three hundred feet, he would decrease his speed and proceed alongside of it over the course of the remaining three hundred feet to the top of the hill. There certainly is no testimony of such decrease of speed. If we attempt to explain the situation on the basis of an increase of speed in the Guth car instead of a decrease in the speed of the deceased's car, we are confronted with an impossibility. If the deceased's car traveled three hundred feet in the interval that the Guth car traveled two hundred feet, so that the two were then abreast, the Guth car could not then suddenly so increase its speed as to travel the next three hundred feet alongside the deceased's car. It is clear that Kenneth either did not drive alongside the Guth car for as great a distance as he said he did or that his other testimony is inaccurate.

The events leading up to the collision necessarily took place in a matter of seconds. Just what the deceased was doing in this interval is not established. We know he was in the front seat, and that is all. Whether his attention was focused on the operation of the car or whether it was diverted are matters which are not explored in the testimony. It may be possible to obtain such evidence. It is relevant in relation to the opportunity he may have had for effective protest. He had no duty to protest until he was aware of the situation and appreciated the hazard.

The interests of justice require that there be a further exploration and consideration of the facts of the case.

*By the Court.*—Order affirmed.

FOWLER, J., took no part.