DENCO BUS CO. v. KELLER.

No. 33759. Nov. 15, 1949.

Rehearing Denied Dec. 13, 1949.

*212 P. 2d 469.*

Draper Grigsby, of Oklahoma City, for plaintiff in error.

Allen G. Nichols and Walter Billingsley, all of Wewoka, for defendant in error.

JOHNSON, J. This action was commenced on the 5th day of February, 1947, by plaintiff in which she sought damages in the sum of $10,300 for personal injuries to her. The issues were joined and a trial had to a jury on the 18th day of December, 1947, which resulted in a verdict in favor of the plaintiff in the sum of $7,166.60. From this judgment and order of the trial court overruling a motion for a new trial, this appeal is prosecuted.

The parties herein will be referred to as they appeared in the trial court.

Briefly, the facts as alleged are as follows: The defendant is a common carrier of passengers for hire, operating one of its bus lines between the cities of Ada, Okla., and Pauls Valley, Okla., over Highway 19; that plaintiff, on September 6, 1945, was riding as a paid passenger on defendant's bus between Ada, Okla., and Pauls Valley; that several miles east of Pauls Valley the driver of defendant's bus negligently tried to pass a truck; that the highway was under repair; that large piles of sand and gravel, material for the repair work, were placed at intervals along the center of the highway, which were clearly observable to the driver; that being unable to pass the truck in the distance between said piles of sand or gravel, and as the bus was going at such high rate of speed that it could not stop upon failure to pass said truck between the sand or gravel pile, but ran head on into a sand or gravel pile with such terrific impact that it came to a sudden stop; that by reason thereof the plaintiff was thrown from her seat against the front part of the bus with such force and violence as to cause her much pain and suffering; that plaintiff was forced by reason of this injury to remain in bed for several days and was immediately placed under the care of physicians; that she sustained injuries to her spinal column; that she has suffered great and excruciating pain; that she has continued to suffer pain in her neck, spine and shoulders; that her spine has been permanently injured; that the injury prevents her from doing any work and has caused her to become afflicted with traumatic arthritis; that her condition continues to grow progressively worse; that she suffered shock and continues to suffer by reason of her condition; that since said accident she is unable to sleep at night by reason of her nervous condition; that she has constantly had medical treatment, but is unable to get relief from her pain and suffering; that before said injury

she was able to work and earn current wages; that she is unable to do so now; that her injuries were caused by the gross carelessness and negligence of the defendant; that she has suffered great mental anguish and permanent disability.

Defendant's first contention is that the court erred in overruling the demurrer to the evidence. The defendant argues that the evidence did not show any actionable or primary negligence by defendant. To sustain this contention, the defendant urges that plaintiff having alleged negligence assumed the burden of proof beyond that of establishing a prima facie case. This contention is untenable. In A. & A. Taxicab Co. v. Bass, 177 Okla. 248, 58 P. 2d 567, this court said:

"The law places upon common carriers the duty of exercising a very high degree of diligence in matters respecting the safety of their passengers. . ." and,

"Where the plaintiff shows by competent evidence to the satisfaction of the jury that he was a passenger in a taxicab operated by defendants and that there was a collision between such taxicab and another car and that such collision was proximately caused by ineffective brakes and the careless and negligent manner in which said taxicab was driven and shows to the satisfaction of the jury that injury complained of and the extent thereof were the direct and proximate result of such collision, he thereby establishes a prima facie case which raises the presumption of negligence and places the burden upon said carriers to overcome such presumption to the satisfaction of the jury."

The evidence is undisputed that plaintiff was a passenger, with full fare paid, and riding on defendant's bus for such passengers; that while so traveling the driver of the bus tried to pass a truck; that there were large sand and gravel piles, material for road repair, at intervals in the center of the highway; that while attempting to pass the truck, the bus collided with one of the sand and gravel piles with such force and violence as to cause the bus to come to a sudden stop, throwing plaintiff out of her seat and causing her serious injury. These facts, under the circumstances, established a prima facie case of negligence against the defendant, thus casting the burden upon the defendant to show that it had exercised the utmost care for the safety of its passengers, and whether the defendant had met this burden was a question for the jury. See A. & A. Taxicab Co. v. Bass, supra. Under the record in this case it was not error for the trial court to overrule the demurrer and refuse to instruct the jury to render a verdict for the defendant.

The defendant urges that the verdict is not sustained by the evidence. The record discloses sufficient evidence to sustain the verdict of the jury. This being an action of legal cognizance, the jury's verdict is deemed to include specific findings in favor of the prevailing party upon all issues of fact, and it is not within the province of this court to disturb the finding of the jury when there is evidence reasonably tending to support such finding. Ramsey v. McKay, 44 Okla. 774, 146 P. 210; Union Transportation Co. v. Lamb, 190 Okla. 327, 123 P. 2d 660; A. & A. Taxicab Co. v. Bass, supra.

Defendant's further contention that the jury's verdict disregarded the instructions of the court is equally untenable. Defendant urges that an examination of the evidence of the plaintiff and defendant only shows an accident occurred to the defendant's bus on which the plaintiff was riding as a paid passenger; that plaintiff did not allege that it was the duty of the defendant to use the highest degree of care, and that the case was tried and the jury was instructed on the theory of "ordinary care," but, as we have said, the plaintiff made out a prima facie case of negligence and brought herself within the rule announced in A. & A. Taxicab Co. v. Bass, supra. The court's instructions as a whole were more favorable to the defendant than the law required under 13 O.S.A.

32. Instead of framing the instructions to impose the utmost or highest degree of care, the court limited that term by the expression "ordinary care." That instruction lowered the standard of care fixed by law, because "ordinary care," in law, at least, means the same as "due care" or "reasonable care," while "utmost care" and "highest degree of care" is such a degree of care as would be exercised by a very careful, prudent and competent person under the same or similar circumstances. Chicago, R. I. & P. Ry. Co. v. Shelton, 135 Okla. 53, 273 P. 988; Weatherford, M. W. & N. W. Ry. Co. v. White, 55 Tex. Civ. App. 32, 118 S. W. 799.

In applying the lower standard of "ordinary care" the jury could find that the defendant only failed to use that degree of care which a man of ordinary prudence would have exercised under the same or similar circumstances, and the jury having rendered judgment in favor of the plaintiff under this instruction, the defendant has no reason to complain.

As defendant's second proposition it urges error in allowing Dr. Clay Williams to testify as to the following statement:

"Mrs. Keller states that she was injured September 6, 1945, while riding as a passenger on a Denco bus from Ada to Pauls Valley, Oklahoma, about twelve miles out of Ada on a gravelled road, which was under construction, and the gravel was piled in the center of the road; Mrs. Keller was seated in the bus the first seat behind the driver near the aisle of the bus and directly behind the gear shift. There was a truck in front of the bus, traveling in the same way, and the bus tried to pass this truck but found there was not enough room between the bus and the gravel in the center of the road. The bus could either hit the truck or the gravel; so it hit the gravel, which caused it to stop suddenly, throwing Mrs. Keller into the gear shift and injured her back. She was in bed three weeks after the accident and has not been able to work since."

The record discloses that the plaintiff had previously testified on this particular point, and that her evidence was positive, unequivocal and uncontradicted. Also, defendant's bus driver in describing the accident testified to substantially the same thing. The settled law of this state is that the admission of allegedly incompetent evidence is not prejudicial error, where that evidence was merely cumulative, and there was other sufficient and competent evidence to sustain the judgment, and if the evidence of a witness on a particular point is positive and unequivocal and uncontradicted, the admission of incompetent evidence tending to corroborate her on that point being merely cumulative, is not reversible error. 22 O. S. A. §1068; First National Bank of Muskogee v. Tevis et al., 29 Okla. 714, 119 P. 218; Maynard et al v. Hustead et al., 185 Okla. 20, 90 P. 2d 30.

It is the further contention of defendant that the court erred in giving instruction No. 14 on the measure of damage. This instruction reads:

"If you find for the plaintiff, by a preponderance of the evidence, in arriving at the amount of damage, if any, she sustained, you may take into consideration her age, health, habits, expectancy of life, occupation, earning power, if any, physical pain and suffering, future pain and suffering, permanent or otherwise, if any, mental anguish, if any, her loss of earning since the injury, the degree of incapacity to perform labor and the present value of her loss of earning in the future, if any, as a result of said injury, if any, her medical bills which she has paid or become obligated to pay, and future bills for medical treatment, and give to her just such an amount as you may find from all the facts and circumstances in the case will justly compensate her for such damages suffered, if any, but in no event to exceed the sum of $10,300.00, the amount sued for.

"Excepted to by the defendant. Exception allowed."

It is suggested that this instruction is erroneous for the reason that there was no evidence as to the permanency of plaintiff's injury or that she would suffer future pain. In this connection we note that four doctors testified for plaintiff. The first doctor was Dr. C. W. Cowell, who testified that he treated her in October, 1945, and continued to treat her until the date of the trial, and that he made a series of X rays. The first was made on October 29, 1945; the second on November 27, 1945; and the third and fourth were made on July 1, 1946. Upon being asked to state what the X rays disclosed, his answer was:

"A. My interpretation of the negative, her condition is due to an arthritic condition."

He was then asked:

"Q. Are you able to state from these X rays, beginning with the first ones you made and ending in July, 1946, whether this condition is shown to be progressive or otherwise? In other words, what does it show in the way of progress, from the first one to the last one? Is it getting better, or is it more pronounced? Look at your X rays and you can answer it with one answer."

His answer was:

"A. Well, according to the comparison of the two negatives, I would say one is apparently more prominent than the other one. The one more prominent is the one in my right hand, dated 7-1-46. Q. That is 7-1-46, the date it was made? A. Yes, sir. Q. You say that it is more prominent than the other two negatives? A. Yes, sir. Q. Does that indicate it is more pronounced? A. I would say it is progressive in comparison to the two. Q. Will you state to the jury, Doctor, whether or not in your judgment as a physician, Mrs. Keller suffers pain in the area indicated by these pictures? A. Well, basing my opinion on the symptoms, both objective and subjective, I would say she does. Q. Do you think, Doctor, she is in earnest about her suffering? Is she telling the truth about it? A. I think so. I have treated her the last two years. Q. Did you recommend she go back to work and work as a seamstress, assuming she worked as a seamstress before she got hurt, would you think she could go back to work now? A. I wouldn't think so with any degree of comfort. Q. You have prescribed rest for her? A. Yes, and spinal support."

The next medical testimony was given by Dr. Andy N. Deaton, who testified as follows:

"Q. Doctor, what did you find by way of symptoms? A. She was quite nervous, complained of her back hurting her; she had limitation of motion in the lower part of the back. Q. Could you say what that was caused by? A. From reviewing the X rays that were given me, and from her history, I would say it was arthritis."

Dr. Deaton also testified that he had made two X rays of the plaintiff on December 18, 1947, and he was asked the following question:

"Q. Are you able to tell the jury whether or not by examination of these X rays from October and November, 1945, and July of 1946, down to the X rays made for you by Dr. Walker,, whether that arthritic condition was progressed, or become more pronounced, or whether it has receded and become minimized? A. From the X ray point of view, they have become progressively worse. Q. I'll ask you if this first X ray taken on October 29, 1945, doesn't show a total lack of any arthritis in the spine? A. I think it shows some changes, yes, sir. Q. But these later ones are progressively worse than the first ones? A. Much so, yes."

The record discloses that after Dr. Deaton examined all the prior X rays, including the ones made in December, 1947, he was asked the question:

"Q. Now, doctor, does that show a pronounced condition? A. It shows an increase in the activity of the arthritic changes which occur in the covering thickening or change in the periosteal covering of the joint. That's what causes the joints to swell, to enlarge. (Picks up plaintiff's Exhibit 5). Now, this is Mrs. Edith Keller, 12-16, Exhibit 5. In

this one you can see definitely an increase in amount of this change here in this fourth and in the fifth lumbar. Here's your lipping of your spine coming out here, an increased amount of that, and this joint here now, there's some involvement of the joint above here."

Dr. John H. Lowe was next called as a medical expert. He used an actual human spine to illustrate to the jury what the X rays showed. He testified substantially that there was no evidence of arthritic process in the first X ray made in October of 1945. He was then asked to examine the X ray taken in November of 1945 and testified that the X ray taken in November of 1945, about thirty days after the first X ray was taken, and that during that period there was a definite change in the fourth and fifth lumbar and that from the indications of the first X ray and the second that the processes seemed more pronounced. This doctor was then asked to examine the X ray made on December 12, 1947, after which he testified that there was quite a definite increase in the arthritic processes in the picture of December 12, 1947. Dr. Lowe further testified as to the permanency and future pain of plaintiff's injuries as follows:

"Q. Will you state whether or not in your opinion that Mrs. Keller will continue to suffer pain? A. I think she will. Q. And do you think this condition will grow worse or better? A. I think it will progress. Q. Do you think she will ever be able to go back to sewing and making clothes like she did before this accident? A. Not unless she is treated. Q. You mean by that not unless this is arrested? Can you stop it, Doctor? A. No. Q. Can anyone stop it? A. Yes. Q. How? A. It has to be done with complete rest and dietary is the easiest way to do it."

Where it is established by medical testimony and X rays that plaintiff's injury was such as by its very nature the jury could infer that it would be permanent and that the injured would suffer future pain, it was not error for the court to instruct on this question.

In this case, the injury is both objective and subjective, and it is plainly apparent from the very nature of the injury, the progressive nature of the traumatic arthritis, the condition of the spine as shown by the X rays and medical evidence, plaintiff's general physical condition, both present and reasonably to result in the future, and pain and suffering which appear reasonably certain that the injured will suffer in the future as a result of the injury are all matters relative to said injury, and may be considered by the jury in determining the amount of the recovery. Sinclair Oil & Gas Co. et al. v. Armour, 172 Okla. 442, 45 P. 2d 754; Magnolia Pipe Line Co. v. Brown, 195 Okla. 345, 157 P. 2d 184. And, as to the measure of damages, this court in Magnolia Pipe Line Co. v. Brown, supra, said:

"It would be impossible to recount all the factors which enter into the common and general notions of what is fair and just as a basis to measure the damages for personal injuries. There can be no absolute standard to measure such damages, and a wide latitude of discretion is necessarily left to the good sense and discretion of the jury which fixes the award. And in an action for personal injury a verdict will not be set aside for excessive damages unless it clearly appears that the jury committed some gross and palpable error, or acted under some improper bias, influence, or prejudice, or has totally mistaken the rules of law by which damages are regulated."

The fourth and last proposition of defendant is that the jury under the influence of passion and prejudice rendered excessive damages.

The plaintiff sought judgment for damages in the total sum of $10,300. The verdict of the jury was in the sum of $7,166.60. The evidence reasonably tended to show that plaintiff received injuries to her back and spine causing traumatic arthritis; that she had been unable to work for two years from date of injury until the date of trial; that she had expended the sum of $500 for medical attention; that she had suf-

fered pain ever since the accident and was suffering from pain at the date of the trial; that she would suffer pain in the future; that she would suffer probable permanent loss or partial permanent loss of earning capacity.

We conclude that under the facts in this case the judgment was not excessive. Under the well established rule of this court, the verdict of a jury supported by competent evidence will not be disturbed on appeal in absence of prejudicial errors of law in court's instructions or its rulings on questions of law presented during trial. Magnolia Pipe Line Co. v. Brown, supra.

Affirmed.

DAVISON, C. J., and CORN, HALLEY, and O'NEAL, JJ., concur. LUTTRELL, J., concurs in result. ARNOLD, V. C. J., dissents.

