**MONTGOMERY WARD & CO., Incorporated, Plaintiff in Error,**

**v.**

**Louis BELLER, Defendant in Error.**

No. 36163.

Supreme Court of Oklahoma.

Nov. 3, 1954.

Rehearing Denied Nov. 30, 1954.

The controversy herein centers around a written contract entitled: "Agreement To Pay Compensation", that the parties entered into on February 5, 1951, almost three months after plaintiff's fall, and while he was at home attempting to recuperate therefrom, after hospitalization and treatment. The pertinent parts of said contract, in which plaintiff is referred to as "employee" and defendant as "employer", are as follows:

"* * * (1) The employer agrees to pay the employee the sum of $25.00 for the period from 11/17/50 to 11/23/50, the receipt whereof by the employee is hereby acknowledged, and the sum of $25.00 per week thereafter during the time that the employee is temporarily totally disabled on account of said injuries.

"(2) The employer further agrees to pay the employee for any permanent disability that may result from said injuries at the rates provided in the Workmen's Compensation Law of the State of Oklahoma, as at present in force, which the parties agree to adopt for such rating purposes only; the employer also agrees to furnish all necessary medical and surgical attendance and hospital accommodations as provided by said Workmen's Compensation Law.

\* \* \* \* \* \*

"(4) *The termination of temporary total disability, the extent of permanent disability*, if any, and the recurrence or aggravation of any disability and *the extent and date of recovery therefrom* shall be determined in the first instance *by the physician then regularly designated by the employer to treat employee injuries* at the location of the employee's injury, *or if that physician is not available for any reason, by the physician then attending the employee. If either party is dissatisfied with the decision of the designated physician or attending physician, the case shall be reviewed by the employer's company medical director, whose decision on all matter re-*

Swank & Swank, Stillwater, for plaintiff in error.

Hoel & Horton, Stillwater, and Sanders & McElroy, Tulsa, for defendant in error.

BLACKBIRD, Justice.

Defendant in error suffered injuries to his foot when he fell from a stepladder on November 11, 1950, during the course of his employment by plaintiff in error in its store at Cushing, Oklahoma. In this action, he, as plaintiff, obtained a verdict and judgment of $3,750 in damages for said injuries, against plaintiff in error, as defendant. The parties will hereinafter be referred to as they appeared in the trial court.

*ferred to in this paragraph shall be final and binding on both employer and employee.*

"(5) *Except for the payments to be made by the employer under this agreement,* the employee hereby releases and forever disxharges the employer from all claims, demands and liability of whatsoever nature arising out of or in connection with said injuries." (Emphasis added.)

Upon the execution of the above agreement, defendant immediately paid plaintiff the sum of $300, as compensation for temporary total disability at the rate of $25 per week (as provided in paragraph (1) of the above agreement) for the period plaintiff had been idled from his job. It thereafter continued such payments for another five weeks until plaintiff had received an additional $125 in compensation under the contract. Then it refused to pay him any more. Plaintiff then instituted the present action.

Plaintiff's petition stated his cause of action with allegations of defendant's negligence, as if it were based on tort, with no mention of the above-quoted "Agreement to Pay Compensation." However, in defendant's answer, it pleaded the agreement and its payments thereunder as estopping plaintiff from maintaining his action. In his reply, plaintiff joined the issue by alleging, not only that the agreement was void as against public policy, but also pleaded, in the alternative, that defendant had breached the contract.

At the trial, the contract in question was introduced in evidence as the *joint* exhibit of both parties, and the court instructed the jury in most respects as if plaintiff's action was for specific performance thereof, and told them how to arrive at plaintiff's recovery by using the features of the Workmen's Compensation Law, referred to in said contract, as a guide.

To demonstrate that the trial court's judgment was erroneous, defendant first contends that it is entirely beyond the issues, and allowed plaintiff to recover on a theory compatible with neither his petition nor the position he assumed at the

trial. It cites several cases which, in effect at least, conform to the familiar rule that a judgment entirely outside the issues as framed by the pleadings and proof, and upon a matter not submitted to the court for determination, is void. We cannot agree, however, that the hypothesis, upon which the rule is predicated, exists with reference to the judgment involved here. While plaintiff's petition contains no reference to the contract and makes no attempt to predicate plaintiff's right to recovery thereon, after defendant's Answer injected the contract into the case as an issue, plaintiff's Reply as hereinbefore noted, not only joined this issue, but, in plaintiff's opening statement, as well as in his proof, including his joining with defendant in the introduction of the contract into evidence, the matter of said contract and plaintiff's rights thereunder were dealt with. It is true, as defendant points out, that plaintiff's attorneys took exception to certain of the court's instructions pertaining to the respective rights of the parties under the contract, but, in this there was nothing specific enough to refute plaintiff's present representation that he "switched" theories after the contract, and the parties' rights thereunder, were made issues in the case. As plaintiff points out, defendant does not claim it was mislead or prejudiced in any way by such change of theories, and we do not think that, on the basis of the record, defendant could sincerely or successfully so contend. As said in Home Ins. Co. v. Voto-Jacobus Motor Co., 189 Okl. 246, 117 P.2d 779, 781, " * * * where under our liberal rules of construction the judgment rendered in a cause is within the issues thereof and supported by the evidence * * *, this court will not reverse same on account of an error in the pleading or procedure, unless it appears that such error has probably resulted in a miscarriage of justice or constituted a substantial violation of some constitutional or statutory right of the appellant." Here it is indicated by the trial court's instructions to the jury, and confirmed by his remarks on the occasion of overruling defendant's motion for a new trial, that he considered plaintiff's petition "to have been amended to conform with the proof."

Even if plaintiff's introduction of evidence germane to the contract, and his rights thereunder, had been objectionable on the ground that such evidence was outside the issues of his pleadings, still, as defendant made no such objection, it cannot now be heard to make its present complaint, and this court is warranted in considering plaintiff's pleadings as amended to conform to the proof, just as did the trial court. See Coats v. Duncan, 202 Okl. 188, 211 P.2d 269, and Rosser-Moon Furniture Co. v. Harris, 191 Okl. 607, 131 P.2d 1004.

It is next argued on behalf of defendant that the court erred in submitting the question of plaintiff's disability to the jury. In this argument counsel first contend that, in doing this, the court disregarded paragraph (4) of the above-quoted contract, which they say makes the findings of the doctors conclusive as to this disability. In this connection, defendant also contends that plaintiff's recovery is not sustainable under the contract, as the evidence shows that his disability was never arrived at in the manner prescribed therein.

With reference to the first of these contentions, we note the trial court's view that the determination of plaintiff's disability as prescribed in the contract would have been binding upon the parties, *only if the contract had not been breached.* We agree that there was no determination of plaintiff's disability as contemplated in the contract, but plaintiff's action was not thereby barred, because the evidence shows defendant to have abandoned the contract without waiting for, or seeking, any such determination. Under such circumstances, plaintiff cannot be held barred from maintaining this action, when, through no fault of his, defendant, in effect, repudiated its obligations thereunder.

The evidence shows that the first physician who attended plaintiff was Dr. Edward H. Thorp. It further appears that though a Dr. Emmett O. Martin may have been the physician customarily used by defendant to attend its employees in such matters at the time of plaintiff's fall, Dr. Martin was not available at the hospital when plaintiff was taken there immediately after said fall. According to plaintiff's evidence, when defendant's manager or as-sistant-manager was apprised of this, he gave instructions that "whatever doctor was available at that time" be engaged. Both the manager, Mr. Knoop, and the assistant, Mr. Doty, denied having authorized plaintiff's use of Dr. Thorp, but Doty described Thorp as defendant's "alternate" doctor; and from the evidence as a whole, it seems to have been defendant's custom, when its regular doctor, Martin, was unavailable, to authorize other available doctors to render at least first aid or preliminary services. At any rate, Dr. Thorp examined plaintiff's foot, X-rayed it, and found therefrom that, in addition to having a severe ankle sprain, there was a break, or "complete fracture", of the navicular bone. He thereupon "reduced" the fracture and applied a plaster cast to plaintiff's foot. After several days, Dr. Thorp then "bivalved" and partially removed the cast and taped plaintiff's foot. After five or six weeks, he removed the cast entirely and had plaintiff wear an elastic bandage support for several days and take hot foot baths. Plaintiff was then walking on crutches. Finally, on December 21, 1950, plaintiff, at Dr. Thorp's suggestion, got a high shoe with an arch support to start wearing on the foot.

After Dr. Thorp's medical services in connection with plaintiff's fractured foot *had been paid for by defendant,* he made a report on plaintiff's case, appearing to have been received by defendant's "Law Department" on January 29, 1951. Besides the above information, this report set forth said physician's opinion that plaintiff had recovered "to a great extent", but that he probably would be unable to walk on his foot enough to work, "for about another three months." After receiving this report, defendant requested Dr. Martin to examine plaintiff and after doing so on February 17, 1951, this physician wrote defendant the results thereof. With reference to plaintiff's condition at that time, Dr. Martin's report, or letter, dated February 22, stated: "When he is on his foot for an hour or so it swells." The letter also stated:

"I feel as though it is satisfactory to have Dr. Thorp continue with the case.

"As to period of temporary total disability, it will be some six weeks to three months before this man can go back to work where he can lift stoves and shove ice boxes around as he tells me he has to do in his kind of work. Furthermore he will always have a weak foot."

According to the undisputed testimony, plaintiff had swelling and continued pain in his foot as late as April, 1951, and it was then that Dr. Thorp recommended that he go to an orthopedic surgeon or specialist, and suggested a Dr. John E. McDonald, of Tulsa, for that purpose. Dr. Martin's testimony was to the effect that, because the patient wasn't "getting along the best way", he made the same recommendation.

Dr. Martin also examined plaintiff's foot again on April 20th, as a result of which he reported to defendant's regional attorney at Kansas City, Missouri, by letter dated April 23rd (among other things) that in his opinion plaintiff "has 10% to 15% disability."

Thereafter, as recommended by both physicians in defendant's employ to attend plaintiff, he was examined by the orthopedic specialist, Dr. McDonald, on April 24. As a result of this examination, Dr. McDonald made a written report, dated May 9, 1951, in which (among other things) he stated plaintiff "has about 50% partial permanent disability of the right foot," and further stated: "It is my feeling that this condition will not improve unless further treatment in the way of a fusion of that joint is done." Immediately upon receiving the above report, plaintiff gave copies thereof to both of the Cushing doctors and to defendant's local manager, Mr. Knoop. When he requested of Mr. Knoop that defendant company furnish him the operation or "fusion" called for in Dr. McDonald's report, Knoop told him that "the company had done all it was going to do." After Knoop had transmitted to its Legal Department defendant's copy of Dr. McDonald's report, it forwarded to him a form of release with instructions that he get plaintiff to sign it. Plaintiff refused, and thereafter commenced the present action.

At the trial, Dr. Thorp, in addition to the statements hereinbefore referred to, testified that, in his opinion, plaintiff will suffer pain and will not be able to work on a job in which he has to stand on his feet "day in and day out", until his foot is operated; and that even after an operation, he may have "some disability" in the foot. His testimony approximately agreed with Dr. McDonald's report by saying plaintiff then had a disability in his foot of "40% or 50%."

■ We have thoroughly examined the evidence and think it sufficient, together with the reasonable inferences to be drawn therefrom, to support a conclusion by the jury that Dr. Thorp, if he was not "the physician then regularly designated by the employer to treat employee injuries", was at least "the physician then attending" plaintiff due to the unavailability of Dr. Martin, its regularly designated physician, as contemplated in paragraph (4) of the hereinbefore quoted contract between plaintiff and defendant. Also, from the manner in which defendant attempted to get a release from plaintiff and terminate its contract obligations toward him, it is obvious it was "dissatisfied with the decision" of this "attending physician"; but there is no proof that it caused plaintiff's case to "be reviewed by" its "company medical director" as provided in said paragraph; and from the undisputed evidence, there can be no question of said company's breach of said contract by such attempted summary termination. As defendant failed to comply with that provision, which was a condition precedent to plaintiff's further compliance with the contract, there was nothing about the contract, or the duties or obligations prescribed for plaintiff therein, to bar him from bringing the present action. As far as the evidence shows, he had discharged his part of the obligations thereunder up to the point of its breach by defendant. There was no duty upon him to seek a review by the company's "medical director", *because he was not the party* "dissatisfied with the decision of the * * * attending physician, * * *". By the same token, it cannot correctly be asserted (as defendant does) that the court erred in submitting the question of

plaintiff's disability to the jury; and that, in so doing, it circumvented paragraph (4) of the parties' contract. As will be seen, because of defendant's failure to perform the condition precedent to binding plaintiff as provided in said paragraph, that provision was never brought into operation. Without defendant's obtaining such review of plaintiff's case and a decision upon the termination of plaintiff's "temporary total disability" and the extent of his "permanent disability" by its medical director, there was no such "decision" to bind plaintiff. This being true, there was little, if anything, left for him to do, upon defendant's failure to abide by the decision of both his "attending physician" and the specialist recommended by both that doctor and Dr. Martin (defendant's regularly designated physician), but seek a decision in a court of law.

As we have found in none of the arguments advanced by defendant, sufficient reason for reversing the trial court's judgment, said judgment is affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and CORN, DAVISON and WILLIAMS, JJ., concur.

ARNOLD, J., concurs in result.