William J. THREADGILL, Administrator of the Estate of Yvonne Legate Nobel, Deceased, Plaintiff in Error,

v.

Iva J. ANDERSON, Administratrix of the Estate of Ernie Vest, Deceased, Defendant in Error.

No. 36804.

Supreme Court of Oklahoma.

March 13, 1956.

Rehearing Denied Nov. 13, 1956.

Houston, Klein, Melone & Davidson, and Lee Grigg, Tulsa, for plaintiff in error.

Amos J. Nichols, and Edgar F. Vickery, for defendant in error.

BLACKBIRD, Justice.

In July, 1952, defendant in error's intestate, Mr. "Ernie" or Ernest W. Vest, at the request of plaintiff in error's intestate, Mrs. Yvonne Legate Nobel, accompanied her on a trip, in her automobile, from Tulsa, Oklahoma, where the parties lived, to Joplin, Missouri, with Mrs. Nobel doing the driving. They started back to Tulsa that night, and en route, at about 2:00 A.M., the next morning, near Claremore, Oklahoma, Mrs. Nobel's auto ran off the highway and down an embankment into a bar ditch, wrecking said car with both of the parties in it, killing Mrs. Nobel and injuring Mr. Vest.

In February, 1953, Mr. Vest instituted the present action against plaintiff in error, as defendant, to recover from Mrs.

Nobel's estate, damages for the injuries he suffered in said accident, on the theory that they were due to Mrs. Nobel's negligent operation of the car in which he was a guest passenger.

In May, about two months after the filing of the action, defendant administrator, by agreement between his attorney at that time and attorneys for plaintiff, took Mr. Vest's deposition before a court reporter in plaintiff's counsel's Tulsa law office. In a dictated statement, apparently made as a preface or preliminary to the deposition, the attorneys, Mr. K.—, for defendant, and Mr. N.—, for plaintiff, entered into the following stipulation:

"Mr. K.—: Depositions taken by agreement, and may we reserve objections?

"Mr. N.—: Until the time of trial.

"Mr. K.—: To be asserted with the same force and effect as if made now.

"Mr. N.—: Yes, sir.

"Mr. K.—: And waiver of signature.

"Mr. N.—: Yes, sir."

Later, before the case came to trial, Mr. Vest was shot to death and the cause was revived in the name of the administratrix of his estate. After she became plaintiff in the action, and it appeared that the defendant had never filed Vest's deposition in the cause, she obtained an order from the court requiring that this be done, to which ruling defendant excepted, and thereafter filed both a motion to strike the deposition from the files in the cause, and written objections to its use, on the principal ground that it was inadmissible "under the Statutes of Oklahoma", which allegation obviously referred to the so-called "Dead Man's Statute" Tit. 12, O.S.1951 § 384.

Later, when the cause came on for trial, the court allowed plaintiff to introduce said deposition as a part of her evidence, over defendant's objections, then renewed orally. It was the only direct evidence offered throughout the trial as to how the accident happened, or whether or not it was proximately caused by any negligence on Mrs. Nobel's part. At the close of plaintiff's evidence, defendant interposed a demurrer thereto and at the close of all of the evidence moved for a directed verdict. These were overruled and the cause was submitted to the jury, which thereafter returned a verdict for plaintiff. After entry of judgment in accord with said verdict, defendant pefected the present appeal. Our continued reference to the parties will be by their trial court designations.

For reversal, defendant urges as his "Proposition I" that the trial court erred in requiring him, by the above-mentioned order, to file Vest's deposition in the cause, and, in later allowing it to be introduced in evidence by the plaintiff administratrix, both of which actions, as hereinbefore noted, were over his objections. His counsel recognize that this court, in the rather early case of Cox v. Gettys, 53 Okl. 58, 156 P. 892, held that where the plaintiff took the deposition of the defendant with reference to certain transactions had with a deceased person, said defendant's incompetency to testify under the "Dead Man's Statute" supra, was waived, "whether the deposition was ever completed and filed in court or not." They argue, however, that there are certain important factual distinctions between that case and the present one, which render the rule, there followed, inapplicable here. We see no reason for expressing our opinion on the asserted question of waiver, on which the views of various courts do not appear to be strictly in harmony, see, for instance, Anderson v. Benson, D.C.D.Neb., 117 F.Supp. 765; Pink v. Dempsey, 350 Ill. App. 405, 113 N.E.2d 334; American Fruit Growers, Inc., v. Calvert, 186 Wash. 29, 56 P.2d 1307, and the cases cited in Baker v. Baker, 363 Mo. 318, 251 S.W.2d 31, 33 A.L.R.2d 1431, and in the Annotations at 159 A.L.R. 411, 412; 134 A.L.R. 212, 230–232, inclusive; 107 A.L.R. 482, 491, and 64 A.L.R. 1148, 1165, if the objection said to be waived is without foundation. The claimed foundation of said objection, i. e.,

the Dead Man's Statute, supra, reads in part as follows:

"*No party* to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, *where such party has acquired title to the cause of action immediately from such deceased person; * * *.*" (Emphasis ours.)

In the present case, neither the administratrix, who was the plaintiff in the action at the time Vest's deposition was introduced, nor Ernest Vest, the original plaintiff, whose incompetency as a witness, after Mrs. Nobel's death, is said to be established by the above-quoted statute, was, as specified therein: " * * * such party * * * (as) acquired title to the cause of action" against Mrs. Nobel, or the representative of her estate, "immediately" from her ("such deceased person"). Causes of action for tort are provided for under statutes such as Tit. 76, O.S.1951 § 5, and Tit. 23, O.S.1951 § 61, which render everyone responsible in damages for injuries to others caused by his or her negligence. Nor did plaintiff's cause of action "devolve from the deceased", or her estate. See Olson v. State Farm Mutual Automobile Ins. Co., 252 Wis. 37, 30 N. W.2d 196. We think the portion of the statute emphasized above is sufficient to show that it does not cover the deposition of Vest, without regard to whether an automobile accident, like the one involved here, is a "transaction" within the meaning of that word as used in one of the opening lines of said statute. (As to the latter, notice Blashfield's Cyclopedia of Automobile Law and Practice (Perm.Ed.), Vol. 9C, sec. 6325, indicating a divergence of views on that question). Furthermore, this conclusion is in harmony with the previous decisions of this Court and the rule of strict construction to which it has adhered. Mike v. Gidney, 195 Okl. 472, 159

P.2d 240. Notice also Berry v. Janeway, 206 Okl. 555, 245 P.2d 71, and Preston v. Berry, 205 Okl. 63, 234 P.2d 417.

█ Under Propositions II and IV of the defendant's brief, his counsel argue respectively that in admitting those portions of Vest's deposition in which (among other things) the deponent opined concerning the speed of Mrs. Nobel's auto previous to the accident, the trial court erroneously admitted testimony on a subject about which Vest was not qualified to give an opinion; and that his deposition as a whole (being as hereinbefore indicated the only evidence on the subject) was insufficient to establish negligence on the part of Mrs. Nobel and that any such negligence was the proximate cause of the accident. We have thoroughly examined Vest's deposition and recognize that it does not specifically, nor unequivocally, establish whether or not Mrs. Nobel's car's running off the road was due to the speed at which she was driving at that particular moment, or whether it was due to her loss of control of the auto as a result thereof, or as a result of her going to sleep, or as a result of a combination of these circumstances, or one or more unknown causes. It is certain, however, from the evidence concerning it, that the accident in question was one which does not ordinarily happen when the driver has his automobile under complete or proper control. Vest's deposition showed that the car was operated exclusively by Mrs. Nobel and that, when he remonstrated with her about her driving, she would neither let him drive, let him out, nor follow his suggestions, but reminded him that "it was her car" and that "she knew how to drive; * * *". Under the circumstances, we do not think the burden was upon plaintiff to prove exactly what caused the accident. See Baker v. Baker, 220 Ala. 201, 124 So. 740; Crooks v. White, 107 Cal. App. 304, 290 P. 497; Monkhouse v. Johns, La.App., 142 So. 347; Shea v. Hern, 132 Me. 361, 171 A. 248, and other cases digested in the Annotations at 93 A.L.R. 1101, beginning at page 1102; 5

Am.Jur., "Automobiles", sec. 608. She made out a prima facie case without it. The burden then shifted to defendant to show that the accident was not due to Mrs. Nobel's negligence. On the basis of the record evidence, and the principles properly applicable thereto, defendant cannot complain that the case was submitted to the jury in the absence of any circumstances to account for the accident, and Mrs. Nobel's loss of control of the car, other than some act, or acts, of negligence on her part. In addition to the above authorities see Denco Bus Co. v. Keller, 202 Okl. 263, 212 P.2d 469.

■ As the accident was one which does not ordinarily occur where the driver has his or her automobile under proper control, and, under the above cited authorities, the burden was not upon plaintiff to establish specifically why, or how, or from what cause—whether excessive speed or otherwise—Mrs. Nobel lost control of her car, we think that even though we assume, without deciding, that Vest was not fully qualified, under the circumstances, to give an accurate estimate or opinion of the speed of the car at any of the times he testified about, and that his deposition does not purport to show the speed of Mrs. Nobel's car at the particular time it left the road, the admission of said deposition on the former point, and the absence of any evidence as to the latter, under the circumstances, constituted no cause for reversal. Proof of excessive speed as the cause of Mrs. Nobel's loss of control being, under the doctrine of res ipsa loquitur, not a necessary element of plaintiff's proof, such characteristics thereof resulted in no prejudice to the defendant. See Aldridge v. Patterson, Okl., 276 P.2d 202.

■ Under his Proposition III, defendant argues that the trial court committed error in giving its Instruction No. 9, which told the jury, among other things, that under our Statutes "no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead." It seems to be his theory that since the evidence showed no hazard, or other vehicle, in or upon the road, with which Mrs. Nobel's car collided, or which, in any manner, caused the accident, the "assured clear distance ahead" rule was not applicable. We think no purpose would be served by entering into a lengthy academic discussion as to whether such instruction is strictly applicable to a case like the present one. Suffice it to say that, assuming the negative of this Proposition, there is nothing to make it appear that the jury was mislead, or that defendant was prejudiced, by the giving of the instruction complained of. In St. Louis-San Francisco Ry. Co. v. Withers, Okl., 270 P.2d 341, it was demonstrated that this court will not ordinarily reverse a judgment merely because a particular instruction, or part thereof, may not be strictly applicable to the facts of the case; but that it may examine the record, including the evidence and the instructions as a whole, and if nothing appears therefrom, to indicate that the verdict upon which the judgment was based, lacks sufficient evidentiary support and that it would have been different had the alleged erroneous instruction not been given, we will hold that the alleged error was harmless. We have reached that conclusion with reference to the alleged error in Instruction No. 9.

In view of the above, and the absence of such indication in the record that either, and/or all, of the errors complained of by defendant has accomplished a miscarriage of justice or a violation of any of his constitutional or statutory rights, the judgment of the trial court must be affirmed. Montgomery Ward & Co. v. Beller, Okl., 276 P.2d 932. It is so ordered.

JOHNSON, C. J., and CORN, HALLEY and HUNT, JJ., concur.

WILLIAMS, V. C. J., and WELCH and JACKSON, JJ., dissent.

JACKSON, Justice (dissenting).

The majority opinion holds that Vest, or his administratrix, is not such a party as acquired title immediately from Mrs. Nobel, and that the cause of action herein does not devolve from Mrs. Nobel, or her estate. I understand the opinion to hold that the cause of action devolves from 76 O.S.1951 § 5, and 23 O.S.1951 § 61. This conclusion is said to be in harmony with the decision reached in Olson v. State Farm Mutual Automobile Ins. Co., 252 Wis. 37, 30 N.W.2d 196.

76 O.S.1951 § 5, supra, provides, in substance, that every one is responsible for injuring another, whether wilfully or for want of ordinary care. 23 O.S.1951 § 61, supra, provides the measure of damages for wrongful injury to another.

In my view it makes no difference whether the right to recover for wrongful injury stems from statute or common law. Vest does, or did, have injuries. Those injuries came to him immediately from Mrs. Nobel. Having acquired his injuries from her, he acquired his cause of action from her. Without injuries caused by her he would have no cause of action against her.

Vest's right of action existed at common law, if that is important. See par. 1 of the Syllabus in St. Louis & S. F. R. Co. v. Goode, 42 Okl. 784, 142 P. 1185, L.R.A. 1915E, 1141. Vest's cause of action was revived after his death pursuant to the provisions of 12 O.S.1951 §§ 1051 and 1052. Under common law his cause of action would have died with him. St. Louis & S. F. R. Co., supra.

58 Am.Jur. § 349, p. 206, is authority for the proposition that the Dead Man's Statute "applies to an action in tort as well as to an action on contract." Under that authority the Dead Man's Statute would apply in this case.

The majority opinion cites the Olson case, supra, as authority for the proposition that the Dead Man's Statute does not apply in this case "for the reason that the cause of action does not devolve from Mrs. Nobel or her estate." The Olson case does not so hold. The Olson case is a wrongful death action and was brought by the widow, Mrs. Olson, in her own name, and for the loss she sustained by reason of the wrongful death of her husband. In Oklahoma her action for wrongful death would have been brought under 12 O.S.1951 §§ 1053 and 1054. See St. Louis & S. F. R. Co. v. Goode, supra. The Olson case holds that a wrongful death action devolves from the wrongful death statutes and not from a deceased person. The rule there applied is expressed in 58 Am.Jur. § 349, p. 207, as follows:

"But such a statute (Dead Man's Statute) does not apply to an action for wrongful death, since the decedent is not a party to such cause of action, and the exception or proviso (the Dead Man's Statute) has nothing to do with actions inter vivos."

I am compelled to conclude that if the cause of action in this case was not acquired from Mrs. Nobel, then no one will ever be able to acquire title to a tort action immediately from a deceased person in Oklahoma. In other words, the Dead Man's Statute, under the majority opinion, can never apply to a tort action in Oklahoma.

We should determine whether the transaction or communications involved herein is a "transaction" within the meaning of the Dead Man's Statute. If our answer is in the affirmative, we should then determine whether defendant has waived the incompetency of Vest's deposition.

I therefore respectfully dissent.

I am authorized to say that WILLIAMS, V. C. J., concurs in views expressed herein.