OSCN Found Document:IN THE MATTER OF K. H.

 

 
 

 
 IN THE MATTER OF K. H.
2021 OK 33
Case Number: 118035 Comp. w/118078
Decided: 06/08/2021
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 33, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN THE MATTER OF K. H., C. H., E. H., and C. H., Deprived Children:
TAYLOR HUDSON, Respondent/Appellant,
v.
STATE OF OKLAHOMA, Petitioner/Appellee.
CODY HUDSON, Respondent/Appellant,
STATE OF OKLAHOMA, Petitioner/Appellee.
APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY
Honorable Cassandra M. Williams, Trial Judge
Â¶0 Parents seek reversal of judgments terminating their parental rights for heinous and shocking physical abuse following jury verdicts entered in Oklahoma County. They challenge the admission of evidence of their pending criminal child abuse charges and the inclusion of the charges in a jury instruction. Parents argue the evidence was irrelevant, highly prejudicial and violated their right to a fair trial. We hold the trial court committed reversible error by admitting the evidence, and we remand for a new trial.
MATTER PREVIOUSLY RETAINED FOR DISPOSITION; REHEARING GRANTED; OPINION OF THE COURT ISSUED MAY 12, 2020 IS WITHDRAWN AND THIS
OPINION ORDERED SUBSTITUTED THEREFOR; JUDGMENT OF THE DISTRICT COURT REVERSED;
NEW TRIAL GRANTED.
Phillip P. Owens II, OWENS LAW OFFICE, PC, Oklahoma City, Oklahoma, for Appellant Taylor Hudson,
Stephanie Marston Younge, YOUNGE LAW FIRM, Oklahoma City, Oklahoma, for Appellant Cody Hudson,
Jaclyn Rivera, Assistant District Attorney, Oklahoma City, Oklahoma, for Respondent State of Oklahoma,
Tracey Jordan Esaw, Assistant Public Defender, Oklahoma City, Oklahoma, for the Children. 
ROWE, J.:
Â¶1 Appellants Taylor Hudson (Mother) and Cody Hudson (Father) appeal the trial court's judgments terminating their parental rights to their biological children, K.H., C.H., E.H., and C.H. Both judgments were entered on separate jury verdicts finding that clear and convincing evidence supported each parent's heinous and shocking physical abuse on another child of Father. After review on rehearing, this Court holds that 1) admitting evidence of State's pending criminal child abuse charges against Parents; and 2) giving a jury instruction that listed the criminal charges to support State's amended petition for immediate termination of parental rights was so inherently prejudicial that it violated Parents' right to a fair trial. The judgments are reversed, and the matter is remanded for a new trial.
BACKGROUND
Â¶2 Father has two sons, R.H. and B.H., from a prior relationship that ended without a legal custody agreement. Father's relationship with Mother, then Taylor Ainsworth, began in 2012 while they lived in Tulsa. R.H. and B.H. visited with them one or two weekends per month.
Â¶3 In January 2015, Father and Mother (collectively, Parents) had a son, C.H. Parents moved to Oklahoma City in October 2015, and in December 2015, their daughter, E.H., was born prematurely with heart problems that required surgery. R.H. and B.H. were visiting with Parents during Spring Break when Parents were notified about E.H.'s surgery. Father's calls to the boys' mother were unanswered, so he drove them to stay with their maternal aunt in Tulsa. Upon arriving, Parents were greeted by the boys' mother, who displayed anger with Father in front of the boys. Thereafter, R.H. and B.H.'s visits and communications with Father decreased.
Â¶4 Parents had a second son, C.H., in November 2017. The following month, R.H. and B.H.'s maternal grandmother called Father to inform him about R.H.'s disclosure of sexual abuse by a friend and that their mother was being evicted from her apartment.
Â¶5 In February 2018, the maternal aunt contacted Father concerned with the boys' health and safety while living with their mother, who had used money for her electric bill to buy drugs. Parents agreed to let the boys live with them again and leased a house in Midwest City, Oklahoma.
Â¶6 After the boys' relocation, B.H. began threatening to harm himself and others. During a DHS visit with the boys in June 2018, DHS reported a bruise on B.H.'s side and dark circles under his eyes. A child abuse pediatrician evaluated R.H. and B.H., concluding in her report they had been psychologically abused while living with their mother in Tulsa and that B.H.'s bruising was consistent with the boys' explanations.
[1] In July 2018, Father discussed B.H.'s continued behavior with the maternal aunt and maternal grandmother, who agreed B.H. should live with them in Tulsa. R.H. remained in Midwest City with Father and Father's other children--the children subject to this action.
Â¶7 On August 27, 2018, the Midwest City police received a report of possible child abuse to R.H. and went to Parents' house to check on him. The officers were told R.H. was not home. After confirming R.H.'s absence, the officers left and contacted the person who reported the abuse to verify R.H.'s reported location. During a recheck of Parents' house, officers found R.H. wrapped in a blanket in the dryer where Father had placed him when the officers first arrived. Father was arrested and jailed.
Â¶8 Following R.H.'s forensic evaluation, Mother, then six months pregnant, was arrested and jailed on or about August 28, 2018. The same day, State petitioned for emergency custody of C.H., E.H., and C.H., which the trial court approved after a hearing on August 29, 2018.
Â¶9 On or about September 6, 2018, Parents were legally married. Six days later, State filed its initial petition against Parents for adjudication of C.H., E.H. and C.H. as deprived children and for immediate termination of parental rights based on shocking and heinous physical abuse to the children's half-sibling, R.H.
[2] 
Â¶10 Mother gave birth to Parents' fourth child, K.H., on December 6, 2018, after which DHS immediately took the newborn into custody. State filed an amended petition on December 18, 2018, adding K.H. as an alleged deprived child.[3] On January 24, 2019, Father entered a no contest stipulation to the amended petition's deprived allegations, and the trial court adjudicated the children deprived as to Father only.
Â¶11 The jury trial was held May 7-10, 2019, on the issues of the children's deprived status as to Mother and for termination of Mother's and Father's parental rights.[4] At the close of State's case-in-chief, the trial court found sufficient evidence to adjudicate the children deprived as to Mother. After the trial court denied Parents' demurrer to the evidence, Mother presented her defense, in which only she and Father testified. Father called no witnesses in his defense, but introduced numerous exhibits that the court admitted into evidence.
Â¶12 The jury rendered separate verdicts for each child, finding that clear and convincing evidence supported termination of each parent's parental rights due to heinous and shocking physical abuse to the child or a sibling of the child (R.H.). Two judgments terminating each parent's rights to K.H., C.H., E.H., and C.H. were entered on May 10, 2019. By order of this Court, Parents' separate appeals were consolidated and retained for disposition.
ISSUES RAISED BY PARENTS
Â¶13 On appeal, Parents assert the trial court abused its discretion by admitting evidence of pending criminal charges, which included an exhibit of the State's criminal information for child abuse filed against them.[5] They also assert the trial court abused its discretion by giving Jury Instruction No. 8, which refers to the criminal child abuse charges.[6] Parents argue the evidence of the criminal charges was irrelevant to the issues to be decided by the jury, highly prejudicial, and prevented their right to a fair trial. Parents also assert insufficiency of the evidence to support the jury's verdicts based on heinous and shocking physical abuse on a sibling.
Â¶14 Three facts distinguish this parental rights termination proceeding from this Court's prior parental rights termination decisions. First, the challenged criminal child abuse charges arise out of the same facts on which State's amended petition is based -- and was offered against Parents prior to conviction.[7] Second, State's petitions seek to adjudicate the children deprived concurrently with termination of parental rights based on heinous and shocking physical abuse against their sibling.[8] Third, over Parents' objections, evidence of the pending criminal charges was admitted during the termination jury trial.
CHALLENGED EVIDENTIARY RULING
Â¶15 The hearing for Mother's motion in limine commenced the first day of the trial, May 7, 2019, at which Father joined her motion.[9] Parents argued the pending criminal charges against them were not relevant to any of the elements the jury would decide in the parental rights termination case. They further argued that, even if evidence of the charges was relevant, it was highly prejudicial and inadmissible.
Â¶16 State contended the filing of criminal charges, as alleged in its amended petition was a fact that State needed to prove for deprived adjudication. Parents disagreed, asserting that status is determined by the trial court, not the jury.
Â¶17 Because almost every witness in the case would testify about Parents' arrest and resulting criminal charges, State argued the evidence was relevant, had probative value, and exclusion of such facts would confuse or mislead the jury. Mother agreed the law enforcement's investigation could be relevant, but argued testimony should stop short of the arrest. Even if evidence of the arrest was allowed, she argued the criminal charges were neither relevant nor probative and could be easily left out.
Â¶18 The trial judge concluded the criminal charge against each parent "is a neutral piece of evidence" and "just a fact" that, in her opinion, "would not lead the jury to conclude the abuse was heinous and shocking."[10] The trial judge denied Parents' motion to limit State from offering evidence about their arrest and criminal charges, finding both sides were prohibited from asking Parents "where their case stands at this point in time or to [allude to] a particular result."[11] 
PARENTAL RIGHTS TERMINATION HEARING
Â¶19 State commenced its case-in-chief after the trial court's denial of Parents' motion in limine, calling Mother as its first witness. State asked Mother for general background information and about the specific incidents on August 24 and August 26, 2018, that resulted in the bruising to R.H.'s face, neck, trunk, and extremities. Her direct examination continued to the second day of trial, during which State asked if she had been criminally charged because of what happened. She answered "yes," after which her counsel objected, reasserting Parents' in limine objections. The trial court overruled the objection, without further explanation, and granted Parents' request for a continuing objection.
Â¶20 State next asked Mother questions about whether she had been arrested, when, how long she was in jail, and finally asked her, "What are you charged with?" Mother responded, "Child Abuse." State then asked Mother to identify State's Exhibit No. 1,[12] asking if she had ever seen "the document." Mother indicated she did not believe so, confirmed her name was on the document, and again stated she did not recall seeing the document.
Â¶21 State next asked, "If on looking through the document, did you recognize what it might be?" Mother replied, "I would assume charges against me." After Mother agreed the document "talks about" the criminal case with "the date of August 27, 2018," State moved for admission of State's Exhibit No. 1. After confirming Parents' continuing objection, the trial judge overruled it and admitted State's Exhibit No. 1.
Â¶22 Referring to State's Exhibit No. 1, State asked, "so in looking at the document, it talks about the date and then . . . the crime of child abuse, correct?" Mother agreed and then confirmed the exhibit identifies the victim, R.H., who was 9 years old on August 27, 2018. State next asked "So looking at the document, does it reflect what you understand you're criminally charged with?" Mother agreed that it did. State then asked, "But this is not resolved? You're not convicted or found guilty?" Mother replied, "I am not."
Â¶23 State called Father as its second witness in its case-in-chief. Father testified in detail about the two separate incidents between him and R.H. during which R.H. received the bruises over his body. State ultimately examined Father regarding State's Exhibit No. 1. State first asked if he had been criminally charged, upon which the trial court overruled the continuing objection. After Father agreed the exhibit charges child abuse and identified the child and his age, State finally asked, "Your case is not resolved yet either, correct?"
STANDARD OF REVIEW
Â¶24 A ruling to allow or deny the admission of evidence rests in the trial court's sound discretion. Jordan v. Gen. Motors Corp., 1979 OK 10, Â¶ 12, 590 P.2d 193, 196. "The trial court is permitted broad discretion in determining the relevance of evidence." Mills v. Grotheer, 1998 OK 33, Â¶ 3, 957 P.2d 540, 541. "Decisions regarding relevance of evidence and its alleged prejudice to the other party will not be overturned absent an abuse of discretion." Id. "A trial court abuses its discretion when it makes a decision based on an erroneous conclusion of law or its decision has no rational basis in evidence." Childers v. Childers, 2016 OK 95, Â¶ 28, 382 P.3d 1020, 1027.
Â¶25 "[N]o judgment shall be reversed' because of an 'error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party." 12 O.S.2011 Â§ 78. For reversal of a ruling that admits evidence, a substantial right must be affected and a timely objection must have been made. 12 O.S.2011 Â§ 2104(A)(1).
Â¶26 Parents have a "constitutionally protected liberty interest in the continuity of the legal bond with their children." In re A.M. & R.W., 2000 OK 82, Â¶ 8, 13 P.3d 484, 487. "The fundamental nature of parental rights requires that the full panoply of procedural safeguards must be applied to child deprivation hearings." Id. (quoting In re Chad, 1978 OK 94, Â¶ 12, 580 P.2d 983, 985).
Â¶27 "A fair trial in a fair tribunal is a basic requirement of due process." Cary v. ONEOK, Inc., 1997 OK 60, Â¶ 15 n.33, 940 P.2d 201, 212 (Opala, J., dissenting) (quoting In re Murchison, 349 U.S. 133, 136 (1955)). "An impartial jury is, of course, an indispensable ingredient of a fair trial, which is assured by the fundamental law's due process guarantee." Id. (citing Agee v. Gant, 1966 OK 31, 412 P.2d 155, 162). "The right to a fair trial is a substantial constitutional right" which a trial court has a duty to ensure. Taliaferro v. Shahsavari, 2006 OK 96, Â¶ 32, 154 P.3d 1240, 1249.
Â¶28 In a challenge to a trial court's evidentiary rulings, this Court reviews for two types of errors. See Karriman v. Orthopedic Clinic, 1973 OK 141, Â¶ 21, 516 P.2d 534, 540 (citing Teague v. United Truck Serv., 1972 OK 97, Â¶ 14, 499 P.2d 380, 383-84). For errors that are not inherently prejudicial, the test of prejudice is the "likelihood that the verdict would have been different had [the errors] not occurred, as measured by the usual criterion of the verdict's support in the evidence." Id.[13] 
Â¶29 Errors that are inherently prejudicial are "those from which, by their nature, one of the litigants obtains 'beneficial prejudice.'" Teague, 1972 OK 97, Â¶ 14, 499 P.2d at 383 (quoting Montgomery v. Murray, 1970 OK 226, Â¶ 20, 481 P.2d 755, 760).[14] Where matters of a highly prejudicial nature have been brought before the jury, even when not manifestly motivated by bad faith, we have regarded such procedure as reversible error "unless it can be affirmatively ascertained from the record that no harm resulted therefrom." Roberts v. Lewis, 1968 OK 38, Â¶ 19, 441 P.2d 350, 355.[15] 
Â¶30 We may not set aside a verdict for misdirection of the jury unless the error "has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." 20 O.S.2011 Â§ 3001.1. In a parental rights termination case challenging a jury instruction and a procedural matter,[16] the trial court's judgment may be reversed "when error constitutes a substantial violation of a constitutional or statutory right." In re T.T.S., 2015 OK 36, Â¶ 15, 373 P.3d 1022, 1028 (citing Â§ 3001.1). 
ANALYSIS
Â¶31 Pursuant to the Oklahoma Children's Code, the "adjudicative hearings and hearings for termination of parental rights shall be conducted according to the rules of evidence." 10A O.S.2011 Â§ 1-4-503(A). The Evidence Code defines what evidence is relevant and admissible. See 12 O.S.2011 Â§Â§ 2401-2403. Therefore, the issue before us -- the relevancy and admissibility of the pending criminal child abuse charges against Parents at this parental rights termination hearing -- is governed by the Evidence Code. 
EVIDENCE OF THE PENDING CRIMINAL CHILD ABUSE CHARGES
FAILS THE RELEVANCY TEST UNDER 12 O.S.2011 Â§ 2401.
Â¶32 Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." 12 O.S.2011 Â§ 2401. "A fact that is 'of consequence' is material, and evidence that affects the probability that a fact is as a party claims it to be has probative force." 1 McCormick on Evidence Â§ 185 (8th ed. 2020). Evidence that is not relevant is not admissible. 12 O.S. 2011 Â§ 2402.
Â¶33 The trial court instructed the jury that to terminate parental rights based on heinous and shocking abuse State is required to prove the following four elements by clear and convincing evidence:[17] 
1) The child has been adjudicated deprived; 2) The parent abused the child or a sibling of the child; 3) The abuse was heinous and shocking; and, 4) Termination of parental rights is in the best interests of the child. 
See 10A O.S.Supp.2018 Â§ 1-4-904(A)(1),(B)(9).
Â¶34 The instruction's first element is a statutory-based mandate -- "A court shall not terminate the rights of a parent to a child unless . . . the child has been adjudicated to be deprived either prior to or concurrently with a proceeding to terminate parental rights." 10A O.S.Supp.2018 Â§ 1-4-904(A)(1) (emphasis added). The trial court adjudicates a child's deprived status in a jury trial, when as here, an initial petition seeks deprived adjudication and termination of parental rights. 10A O.S.Supp.2018 Â§ 1-4-502(A)(1).[18] 
Â¶35 Pursuant to the clear and unambiguous language of Â§ 1-4-904(A)(1) and Â§ 1-4-502(A)(1), evidence relevant to the first element demonstrates the trial court has performed its statutory duty to adjudicate the children deprived as to each parent, either prior to trial or before submitting the parental rights termination determination to the jury.[19] Evidence of the criminal child abuse charges against Parents was not relevant to the instruction's first element.
Â¶36 The instruction's second element -- "the parent abused the child or a sibling of the child" -- is based on Â§ 1-4-904(B)(9).[20] Instruction No. 13 defined statutory "abuse" to mean "harm or threatened harm to a child's health, safety or welfare, including but not limited to nonaccidental physical or mental injury . . . ."[21] For purposes of applying Â§ 2401, evidence relevant to the second element must have a tendency to make the existence of actions or omissions by Parents that meet the statutory definition of abuse more or less probable than it would be without the evidence.
Â¶37 State's direct examination of Parents about their criminal child abuse charges--and the admission of Exhibit No. 1--both fail Â§ 2401's relevancy test when applied to the second element. The Exhibit's first page is most problematic, which reads, in pertinent part:
BY THE AUTHORITY OF THE STATE OF OKLAHOMA, COMES NOW DAVID W. PRATER . . . ACTING DISTRICT ATTORNEY IN
AND FOR OKLAHOMA . . . and on his official oath informs the district court that:
Count 1: On or about the 27th day of August 2018, A.D., the crime of child abuse was feloniously committed in Oklahoma County by Cody Wayne Hudson and Taylor Ainsworth, who acting jointly, willfully or maliciously injured, tortured, maimed or used unreasonable force upon a child . . . at the time nine (9) years of age . . . conjointly striking R.H. multiple times about his entire body causing bruises, contrary to the provisions of [Â§] 843.5 of Title 21 of the Oklahoma Statutes. 
State's Exhibit No. 1, ROA at 242 (emphasis added). Exhibit No. 1 represents to the jury State's legal opinion that Parents committed the crime of child abuse. This evidence has no tendency to make the existence of the fact that Parents abused R.H., as defined by Oklahoma's parental rights termination statutes, more or less probable than it would be without the exhibit.
Â¶38 As used in the instruction's third element, the phrase "heinous and shocking abuse" is defined by 10A O.S.Supp.2018 Â§ 1-1-105(34) and "includes, but is not limited to, aggravated physical abuse that results in serious bodily, mental or emotional injury." Section 1-1-105(34) further defines "serious bodily injury."[22] 
Â¶39 Pursuant to Â§ 1-1-105(34) and Â§ 2401, evidence relevant to the third element is restricted to evidence having a tendency to make the existence of heinous and shocking abuse more or less probable.[23] State's specific questions to Parents regarding the criminal child abuse charges and its admission into evidence of State's Exhibit No. 1 are not relevant to the third element. Evidence that is not relevant is inadmissible. 12 O.S.2011 Â§ 2402.
ADMISSION OF A PENDING CRIMINAL CHARGE IN A JURY
TRIAL TO TERMINATE PARENTAL RIGHTS IS OVERLY PREJUDICIAL AND IS INADMISSIBLE.
Â¶40 All relevant evidence is admissible, unless the trial court determines that "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise." 12 O.S.2011 Â§ 2403. "Probative value refers to or means the tendency of evidence to establish the proposition that it is offered to prove." 1 McCormick on Evidence Â§ 185 (8th ed. 2020). Even if the evidence of the criminal child abuse charges could be construed as relevant to the fourth element, the probative value of such evidence in this proceeding for termination of parental rights is substantially outweighed by the danger of unfair prejudice.
Â¶41 State received beneficial prejudice from the evidence of the pending criminal child abuse charges against Parents. State's direct examination of Parents required them to confirm criminal child abuse charges had been filed and were still pending against them. Such testimony served dual purposes -- it harmed Parents' credibility with the jury at the outset of the trial and planted in the jurors' minds Parents' uncertain future with their children.
Â¶42 State received additional beneficial prejudice from the admission into evidence of the actual criminal child abuse information. Admission of State's Exhibit No. 1 for viewing during deliberations 1) informed the jury that Parents had been charged with felony child abuse; and 2) indirectly achieved what a State prosecutor is prohibited from doing in a criminal trial -- giving personal opinions of the accused's guilt. "The prosecutor's opinions carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." Bechtel v. State, 1987 OK CR 126, Â¶ 11, 738 P.2d 559, 561 (quoting United States v. Young, 470 U.S. 1, 18-19 (1985)). It is impossible to affirmatively ascertain from the record before this Court that no harm resulted from the admission of the evidence of pending criminal charges against Parents. This is inherently prejudicial error. 
Â¶43 The trial judge, as the gatekeeper of the evidentiary process, has the duty to screen evidence to determine its relevance and reliability. Myers v. Mo. Pac. R.R. Co., 2002 OK 60, Â¶ 36, 52 P.3d 1014, 1033; Cities Serv. Co. v. Gulf Oil Corp., 1999 OK 14, Â¶ 32, 980 P.2d 116, 132. The trial court's ruling to admit evidence of State's criminal child abuse charges against Parents implies that the evidence is both relevant under Â§ 2401 and that its probative value is not substantially outweighed by the dangers of unfair prejudice, confusion of the issues or misleading the jury under Â§ 2403. We conclude the trial court misapplied these statutes, and as a result, erroneously concluded the evidence of State's criminal child abuse charges was relevant and admissible in this proceeding for termination of parental rights. 
TRIAL COURT ABUSED ITS DISCRETION BY GIVING INSTRUCTION NO. 8 WHICH REFERENCED THE PREJUDICIAL CHILD ABUSE CHARGES AGAINST PARENTS.
Â¶44 Parents challenge Instruction No. 8's reference to their criminal charges. Instruction No. 8, entitled "Statement of the Case," quotes verbatim the amended petition's allegations against Parents and State's requests to adjudicate the children deprived and to terminate each parent's parental rights for heinous and shocking abuse to a sibling pursuant to 10A O.S.Supp.2018 Â§ 1-4-904(B)(9). The criminal charges are one of four facts supporting the amended petition's separate allegations that Parent's home was unfit based on heinous and shocking physical abuse. Parents argue the jury was misled and reached a different conclusion than it would have without the erroneous instruction.
Â¶45 State contends Instruction No. 8 complies with Oklahoma Uniform Jury Instructions (OUJI)-Juvenile No. 2.2's instructions for the "Statement of the Case." To further justify Instruction No. 8, as given, State relies on the trial court's Adjudication Order based on Father's pretrial stipulation to the amended petition's deprived allegations that referenced the criminal charges.
Â¶46 When OUJI provides an instruction applicable in a civil case and the court determines the jury should be instructed on the subject, the OUJI instruction "shall be used unless the court determines that it does not accurately state the law." 12 O.S.2011 Â§ 577.2. To determine the applicability of OUJI to a case, the court gives "due consideration to the facts and the prevailing law." Id. Instruction No. 8 clearly states it is "OUJI Juv-2.2."
Â¶47 The fact of the pending criminal charges alleged in State's initial and amended petitions to adjudicate the children deprived could arguably be construed as material for purposes of providing due process notice of the statutory conditions on which the State believes the children are deprived and which justify intervention in the family unit.[24] However, Â§ 1-4-904(B)(9) defines the material allegations for a petition seeking termination of parental rights -- the parents abused the child or a sibling of the child and the abuse was heinous and shocking. The filing of criminal charges against Mother and Father are not material allegations of the petitions based on the heinous and shocking ground for termination of parental rights.[25] We conclude the trial court erred by failing to delete these allegations from Instruction No. 8.
Â¶48 State's reliance on Instruction No. 8's concluding sentence -- "[t]hese allegations are not evidence in the case" -- as a limiting instruction fails to consider the potential for jury confusion in this case. Contrary to Instruction No. 8's concluding sentence, Instruction No. 3 explained the jury's duty is "to determine the facts of this case from the evidence produced in open court," and "the evidence which you are to consider consists of the testimony of the witnesses [and] exhibits, if any, admitted into evidence . . . ."[26] Confusion and irreconcilable contradiction from these instructions occurred when applied to the evidence in this case, specifically the admission of State's felony child abuse information as an exhibit.
Â¶49 Based on State's evidence, the trial court performed its statutory duty to adjudicate the children deprived as to Mother before giving Instruction No. 8 and by instructing the jury that "the children . . . have each been adjudicated deprived as to their Mother and Father."[27] For purposes of the jury's determination of whether to terminate Parents' parental rights, it was unnecessary to include the prejudicial reference to the criminal child abuse charges in Instruction No. 8.
CONCLUSION
Â¶50 The trial court abused its discretion by admitting evidence of the pending criminal child abuse charges against Parents that arose from the same facts upon which State petitioned for deprived adjudication and for immediate termination of their parental rights. Accordingly, we conclude admission of the evidence was inherently prejudicial, prevented Parents from receiving a fair trial, and constitutes reversible error. We further conclude that it was reversible error to give Instruction No. 8, which also referred to the same criminal charges. The trial court's adjudication of the children deprived as to each parent was not appealed and is undisturbed on appeal. That part of the judgment terminating parental rights is reversed, and this cause is remanded for new trial.
MATTER PREVIOUSLY RETAINED FOR DISPOSITION; REHEARING GRANTED; OPINION OF THE COURT ISSUED MAY 12, 2020 IS WITHDRAWN AND THIS
OPINION ORDERED SUBSTITUTED THEREFOR; JUDGMENT OF THE DISTRICT COURT REVERSED;
NEW TRIAL GRANTED.
Darby, C.J. (by separate writing), Winchester, Edmondson, Gurich, and Rowe, JJ., concur;
Kane, V.C.J., Kauger, and Combs (by separate writing), JJ., dissent.
FOOTNOTES
[1] The pediatrician's report explained 1) the June 2018 visit resulted from a referral "while R.H. was living in Tulsa due to his younger brother [B.H.] having bruises on his body and a black eye"; 2) a new case was filed for the psychological abuse suffered in Tulsa; and 3) she was "not concerned of physical abuse at this time." See Mother's Exhibits 2.002, 2.002a, 2.004.
[2] State's initial petition alleges the children are deprived, in part, because "the home of the Mother is unfit due to threat of harm" and further alleges "an initial filing of child abuse by injury has been filed against the Mother in MI-2018-XXXX in the District Court of Oklahoma County." An identical deprived condition alleged against Father similarly states he "has been charged with child abuse by injury" that was filed in the same county as "CPC-2018-XXXX." The petition seeks termination of their parental rights "pursuant to 10A O.S. Â§ 1-4-904(A)(1) and (B)(9) for heinous and shocking abuse to a half sibling."
[3] The amended petition listed the child abuse charges to support the deprived condition that the home of each parent "is unfit due to heinous and shocking physical abuse."
[4] As to Mother, the trial to adjudicate was held concurrently with the proceeding to terminate pursuant to 10A O.S. Â§ 1-4-904(A)(1).
[5] State's Exhibit No. 1 is an eight-page document. The first page is the criminal information the District Attorney filed in Oklahoma County District Court that alleges Parents feloniously committed numerous acts constituting the crime of child abuse against R.H. on or about August 27, 2018. The remainder of the exhibit is a list of witnesses and affidavits for probable cause and for an arrest warrant.
[6] The three-page Instruction No. 8 is the Statement of the Case, which quotes, in full, the amended petition's allegations and requests for relief. ROA at 172-73. As to both Parents, the instruction reads:
*** ***
That the home of the [Mother/Father] is unfit due to heinous and shocking physical abuse:
That the half-sibling, [R.H.], was observed to have bruising to a majority of his body; That [R.H.] disclosed physical and mental abuse by Mother and Father; That a CHO-25 was filed due to [R.H.'s] injuries being consistent with non-accidental trauma;
That the [Mother/Father] is charged in Oklahoma County CF-2018-XXXX with Child Abuse.
[7] In In re A.M. & R.W, 2000 OK 82, 13 P.3d 484, State similarly sought immediate termination of parental rights for heinous and shocking physical abuse against the mother after she beat her son with an extension cord. She pleaded guilty to charges of injury to a minor child and received a three-year sentence before the termination trial at which the trial court excluded her from the courtroom during her son's testimony. This Court reviewed the mother's alleged procedural due process violations, agreed the trial court failed to adopt alternative procedures to ensure effective cross-examination, but found no erroneous deprivation of her rights because the mother "had recently engaged in face-to-face confrontation and cross-examination of her son in the criminal proceeding that arose out of the same conduct that [was] the subject of [the parental rights termination] case." Id. Â¶ 15, 13 P.3d at 488.
[8] See In re T.T.S., 2015 OK 36, Â¶ 4, 373 P.3d 1022, 1025 (the mother's unrelated arrest and incarceration did not occur until five months after her child was adjudicated deprived; termination of parental rights was based on 10A O.S. Â§ 1-4-904(B)(5) -- failure to correct the conditions that led to the child's deprived status).
[9] Mother initially asked the trial court to prohibit State from introducing all evidence of Parents' arrest and criminal charges. On appeal, Parents limit their arguments to State's improper examination of Parents about their criminal charges and admission of State's exhibit of those charges.
[10] See Trial Tr. vol. 1, 9:24 --10:2.
[11] See Trial Tr. vol. 1, 10:13 --19.
[12] See supra note 5 for a description of State's Exhibit No. 1.
[13] Reviewing alleged errors with trial court evidentiary rulings (e.g., allowing defendants to invade the province of the jury, violating the best evidence rule and other irregularities during witness testimony) the Karriman Court concluded "none of it pertains to errors we consider inherently prejudicial" and applied the test for errors not inherently prejudicial. 1973 OK 141, Â¶ 21, 516 P.2d at 540 (citing Teague, 1972 OK 97, Â¶ 14, 499 P.2d at 383-84). In Teague the Court found the challenged jury instruction did not misinterpret the law or contain on its face any erroneous statement of fundamental law and applied the test for prejudice for "other errors not inherently prejudicial." Teague, 1972 OK 97, Â¶ 14, 499 P.2d at 383-84.
[14] In Montgomery v. Murray, 1970 OK 226, 481 P.2d 755, the plaintiff alleged prejudicial error from the defendant's questioning plaintiff without showing an evidentiary basis or reason for it. The Court noted the plaintiff did not argue "the interrogation . . . concerning a matter irrelevant to the issue of the defendant's liability . . . injected into the case 'beneficial prejudice' that experience has demonstrated will usually affect verdicts." Id. Â¶ 20, 481 P.2d at 760. Unlike the plaintiff in Montgomery, Parents have argued on appeal that the admission of evidence of the criminal charges was irrelevant to the issues in the termination proceeding, highly prejudicial, affected the jury verdict, and prevented them from having a fair trial.
[15] The appellant in Roberts sought reversal of conduct by defendants' counsel who asserted irrelevant and highly prejudicial questions and statements and also argued unsupported matters to the jury. 1968 OK 38, Â¶ 17, 441 P.2d at 354. Finding matters of a highly prejudicial nature were brought before the jury, the Roberts Court declined to apply the usual test for prejudice -- "where the erroneous procedure must be regarded as harmless unless it appears likely that the verdict was influenced or affected thereby." Id. Â¶ 19, 441 P.2d at 354.
[16] Faulkenberry v. Kan. City S. Ry. Co., 1979 OK 142, Â¶ 15 n.19, 602 P.2d 203, 207 ("Admissibility of evidence . . . [is] a procedural matter."); see also Guinn v. Kan. City S. Ry. Co., 1975 OK 148, Â¶ 21, 547 P.2d 1310, 1314 ("[P]rocedural matters, such as the admissibility of evidence, are governed by the law of the forum."); Teague, 1972 OK 97, Â¶ 14, 499 P.2d at 383-84 (finding claimed errors in jury instructions are also procedural); Threadgill v. Anderson, 1956 OK 91, Â¶ 0, 303 P.2d 297, 298 (finding errors in procedure include the admission of incompetent evidence and the giving of an instruction).
[17] "Instruction #12" notes the use of Oklahoma Uniform Jury Instructions (OUJI), OUJI-Juvenile-3.9, without modification. ROA at 178.
[18] Titled "Jury Trial," 10A O.S.Supp.2018 Â§ 1-4-502(A)(1) reads, "When the initial petition to determine if a child is deprived also contains a request for termination of parental rights in which case the court shall determine if the child should be adjudicated deprived and, if so, the jury shall determine if parental rights should be terminated."
[19] The record establishes the trial court adjudicated the children deprived as to Father four months before the trial to terminate both parents' parental rights. After the State rested its case-in-chief at the trial, the trial court determined, out of the jury's presence, that the children should be adjudicated deprived as to Mother, finding sufficient evidence supported the four deprived conditions alleged in State's amended petition.
[20] Section 1-4-904(B)(9) permits a trial court to terminate parental rights upon "finding that the parent has abused or neglected the child or a sibling of the child . . . that is heinous or shocking."
[21] See Instruction #13. ROA at 179. The Instruction notes it is "OUJI-Juvenile 3.10 Modified" and cites 10A O.S.Supp.2010 Â§ 1-1-105(2) as authority. Despite legislative amendment to the definition of abuse in 2015, the Instruction's definition is consistent with 10A O.S.Supp.2018 Â§ 1-1-105(2), the version in effect when the matter arose and when the case was tried to the jury.
[22] "Serious bodily injury" means injury that involves:
a) a substantial risk of death,
b) extreme physical pain,
c) protracted disfigurement,
d) a loss or impairment of the function of a body member, organ, or mental faculty,
e) an injury to an internal or external organ or the body,
f) a bone fracture,
g) sexual abuse or sexual exploitation, h) chronic abuse including, but not limited to, physical, emotional, or sexual abuse, or sexual exploitation which is repeated or continuing,
i) torture that includes, but is not limited to, inflicting, participating in or assisting in inflicting intense physical or emotional pain upon a child repeatedly over a period of time for the purpose of coercing or terrorizing a child or for the purpose of satisfying the craven, cruel, or prurient desires of the perpetrator or another person, or
j) any other similar aggravated circumstance;
[23] For example, relevant evidence would include State's examination of the child abuse pediatrician regarding whether R.H.'s bruises qualify as a "serious bodily injury" and therefore "heinous and shocking" physical abuse. Similarly, relevant evidence would also include Parents' cross-examination of the same witness in order to eliminate any probability that R.H.'s bruises qualify as a serious bodily injury.
[24] See 10A O.S.2011 Â§ 1-4-301(A)(2) ("A petition in a proceeding alleging a child to be deprived . . . shall set forth . . . with particularity, facts which bring the child within the purview of this chapter.")
[25] In this specific case, the amended petition's separate allegations against Mother and Father, i.e., "[t]hat the home . . . is unfit due to heinous and shocking physical abuse," would have alone satisfied OUJI-Juvenile No. 2.2's instruction to set out the material allegations of the petition regarding the grounds of the termination of parental rights.
[26] Instruction #3. ROA at 165 (emphasis added).
[27] Instruction #15. ROA at 181.

DARBY, C.J., with whom WINCHESTER and GURICH, JJ. join, concurring specially: 
Â¶1 The issue in this case is, and has always been, whether the trial court abused its discretion in admitting testimonial and written evidence of pending criminal charges against the parents in their jury trial on the State's petition to terminate their parental rights. The issue has always been whether the parents were deprived of constitutional due process at the trial to end their constitutional right to raise their own children.
Â¶2 The idea that the parents "arguably" waived their standard of review argument on rehearing is not supported by any authority. The cases listed in the dissent to support the idea of waiver involved new issues or new questions, not additional arguments concerning the same issue raised at the trial, on appeal, and on rehearing. Appellants abuse of discretion claim, based on admission of evidence of the criminal charge, has been the "issue" from the beginning. The only difference on rehearing is refinement of the argument.
Â¶3 Plus, the cases listed in support of the dissent's suggestion of waiver all state that new issues are generally not considered on rehearing. This is not a hard-and-fast rule. In Pointer v. Hill the Court quoted: "In civil cases it is a well recognized rule that questions not advanced on the original hearing will not be considered on petition for rehearing except in unusual circumstances, or where fundamental or jurisdictional error is involved." Pointer v. Hill, 1975 OK 73, Â¶ 15, 536 P.2d 358, 361 (quoting 5 Am.Jur.2d Appeal & Error Â§ 987). The parents in this appeal raise no new questions, the circumstances in this case are beyond unusual, and the trial court's error was fundamental and regards the safe-guarded constitutional right to parenthood. The parents did not waive their argument.
Â¶4 In In re T.T.S. the trial court terminated the natural mother's parental rights after jury trial on grounds she had failed to correct the conditions which led to the deprived adjudication. In re T.T.S., 2015 OK 36, Â¶ 10, 373 P.3d 1022, 1026. This Court reversed the termination order because neither the instructions nor the verdict forms detailed the particular conditions mother had failed to remedy. Id. Â¶ 22, 373 P.3d at 1030. We noted:
Given the gravity of the rights implicated, vigilant enforcement of the full panoply of procedural safeguards must be carried out in child deprivation cases. In the Matter of Chad S., 1978 OK 94, Â¶ 12, 580 P.2d 983, 985. Furthermore, because this matter involves a challenge to jury instructions and matters of procedure, we may reverse the trial court verdict when error constitutes a substantial violation of a constitutional or statutory right. 20 O.S.2011 Â§ 3001.1.
Id. Â¶ 15, 373 P.3d at 1028. We further recognized:
We have held that a fundamental error is one which "has a substantial effect on the rights of one or more of the parties" and is reviewable even if the parties did not raise the error on appeal. Sullivan, 1998 OK 48, Â¶Â¶ 4, 7, 961 P.2d at 802--03. Thus, an inaccurate jury instruction which infringes on a party's due process rights constitutes fundamental error and warrants review by this Court.
Id. Â¶ 17, 373 P.3d 1022, 1029.
Â¶5 The trial court in this case called the pending child abuse charges "a neutral piece of evidence." The trial court then permitted the State to ask the mother eighteen (18), and the father thirteen (13) questions for a total of thirty-one (31) questions regarding the criminal charges for child abuse. The trial court admitted the criminal information of the charges, plus the probable cause affidavits of two law enforcement officers who did not even testify at the trial. In Instruction #8, the trial court verbatim recited the factual allegations from the amended petition and instructed the jury that the State had alleged, among other things, "[t]hat the Mother [and Father are] charged in Oklahoma County CF-2018-4283 with Child Abuse."
Â¶6 If evidence relating to the pending criminal charges had any probative value, it would be probative of the parents' unfitness, thus unfairly prejudicial against parents. See 12 O.S.2011, Â§ 2403. If the evidence had no probative value at all, it would most certainly be substantially outweighed by the danger of unfair prejudice. See 12 O.S.2011, Â§Â§ 2401--2403.
Â¶7 The trial court ignored the Committee Comments in OUJI Juv. 2.2 which counsel that "[a]lthough the jury should be informed of the material allegations of the petition regarding the termination of parental rights, the petition itself should not be read to the jury. See Marathon Battery Co. v. Kilpatrick, 1966 OK 268, Â¶ 60, 418 P.2d 900, 915 ('it is not good practice to formulate the issues by reading at large from the pleadings')."
Â¶8 The trial court's only attempt to cure its errors was to include in Instruction # 8 the last sentence of OUJI Juv. 2.2 which states, "[t]hese allegations are not evidence in the case." For purposes of this appeal, that disclaimer only applied to the sentence in the instruction which simply stated that each parent was ". . . charged in Oklahoma County CF-2018-4283 with Child Abuse." But the evidence also included a copy of the information and two unauthorized probable cause affidavits, not to mention the 31 questions asked at trial. These trial court errors were not somehow cured.
Â¶9 This gross abuse of discretion violated the parents' fundamental, constitutional rights to due process and to a fair trial regarding their right to parent their children.

COMBS, J., with whom Kane, V.C.J., and Kauger, J., join, dissenting:
Â¶
1 Any error the trial court made in allowing the State to introduce evidence of pending criminal charges against Taylor and Cody Hudson (hereinafter "Mother" and "Father" or, collectively, "Parents") for child abuse was harmless error, particularly in light of the overwhelming amount of evidence presented at trial that demonstrates Parents engaged in heinous and shocking abuse against R.H., the half-sibling of K.H., C.H., E.H., and C.H. (hereinafter "Deprived Children"). Moreover, the majority's decision to elevate what amounts to procedural abuses of discretion into a full-blown constitutional errors is misguided, particularly insofar as Parents failed to complain about any constitutional errors prior to rehearing and have therefore waived application of a heightened standard of harmless error review. But the majority's application of the heightened standard may also serve to misguide other courts into thinking harmless error review has been eliminated in termination-of-parental-rights cases or in any case where the trial court erroneously admits evidence in violation of section 2403 of the Oklahoma Evidence Code. For these reasons, I respectfully dissent.
I. THE ALLEGED ERRORS
Â¶2 On appeal,[1] Parents ask this Court to find that the trial court committed reversible error when it admitted documentary and testimonial evidence about the felony child-abuse charges against Parents. Parents also ask this Court to find that the trial court committed reversible error when it allowed Jury Instruction # 8 to include a reference to the criminal charges. Below, I set forth the text of the jury instruction and evidence at issue in their entirety because I think their content and context are important in the ultimate analysis of whether any error committed by the trial court is reversible.
Â¶3 Concerning the alleged evidentiary error, our review begins with Mother's motion in limine filed the day before trial, which sought exclusion of any evidence regarding Parents' arrest or criminal charges.[2] The next day between voir dire and opening statements, the trial court held a brief hearing on the motion in limine outside the presence of the jury. Mother's counsel first argued "the fact that they've been charged, since they haven't been convicted, is not admissible."[3] Mother's counsel asserted next that "[t]he fact that my client and her husband have been charged criminally in this case is not probative or -- or germane in any want [sic] to any issues that the jury is required to determine in this case."[4] Lastly, Mother's counsel contended that, "[e]ven if The Court were to determine that there was some relevance to the fact that they were arrested and charged, it's our position that any minimal probative value that that might have would be substantially outweighed by the danger of unfair prejudice, particularly, the concern that the jury might . . . [think] these folks are probably going to go to jail and [will] lose the kids anyway, and have that affect how this turns out."[5] Father's counsel joined the motion in limine but did not offer any additional arguments.[6] In response, the State countered that Parents' arrests and criminal charges are probative insofar as they comprise "the starting point for this entire case," "go[] directly to the heart of the matter of why we're here," and "go[] into almost the testimony of every witness that will present testimony in this case as to what happened and led up to that moment, and what happened following that moment when the police arrived at their home."[7] The State also argued that "leav[ing] that piece missing when everyone is going to be talking about parts around it, is very confusing, misleading" to the jury.[8] The State further suggested that any risk of prejudice could be mitigated by permitting Parents to "talk all they want about the fact that they are only charged and not convicted of that charge."[9] The trial court ultimately denied Mother's motion in limine:
THE COURT: . . . I've done my own research in this area. I am not able to find any law that directs This Court with respect to whether this is inadmissible evidence or, more importantly, whether or not it is unfairly prejudicial. You know, by the nature of these events that occurred, that leads us to where we are today. It is -- I mean, the facts are what the facts are.
. . . .
You know, as I have looked at this and tried my best to make sure that this jury does not walk away with an impression one way or the other, this is a neutral piece of evidence. The fact that the parents were both charged is a fact. The fact that law enforcement was involved in this case is a fact. 
Is it one that leads a jury to conclude that the abuse is heinous and shocking? Well, I don't think that that's the case. Because I think that the jury's instructions, as I look through them, Instruction No. 3.11[10] that defines heinous and shocking abuse, doesn't list anywhere that there's been a criminal charge. It does give the jury specific direction on what to look at in terms of the level of abuse to determine whether or not it fits within the area of physical abuse versus the higher level of heinous and shocking abuse.
So to the extent that both parents have asked This Court to limit The State of Oklahoma from offering evidence and testimony about the [ar]rest, and that are charging [sic] both parents in this case, I'm going to deny that request.
To ask the parents questions about where their case stands at this point in time or to elude [sic] a particular result, I'm prohibiting both sides from being able to do that.
At this point in time, what I'm allowing you all to suggest at this point in time, to the jury, which is true, which is this case, the criminal charges, are still pending against both parents. No more than that.[11]
Thereafter, the trial court stuck to its preliminary ruling, denying throughout the trial Parents' objections to evidence concerning the pending criminal charges.
Â¶4 The evidence that was allegedly admitted in error consists of (1) State's Exhibit 1, which is a copy of the Information filed in the criminal case against Parents and of the probable cause affidavits of the officers who arrested Parents
[12]; and (2) a series of questions and answers during the State's direct examination of Mother and Father.[13] The State did not mention the criminal charges in its opening or closing statements, nor did that topic come up during the examination of any other witness--including the examination of the police officer who found R.H. in the washing machine.
Â¶5 Concerning the alleged jury instruction error, our review begins with the objection that Mother's counsel lodged against Jury Instruction # 8 during the jury instruction conference held outside the presence of the jury after all parties rested on the fourth day of the trial. Mother objected to the inclusion of "statements that Mother and Father have been charged with child abuse in CF-2018-4283 case in Oklahoma County" on the same basis "as [her] motion in limine asserted prior to trial."
[14] Father joined the objection and added that the inclusion of any reference to the criminal case was "substantially more prejudicial than probative."[15] Jury Instruction # 8 was the "Statement of the Case" instruction modeled after Juvenile Instruction No. 2.2 of the Oklahoma Uniform Jury Instructions for Juvenile Cases (OUJI-Juv.),[16] which was designed to notify the jury about the nature of the case (i.e., that it was an action for termination of parental rights) and to summarize the allegations contained in the controlling pleading. See OUJI-Juv. # 2.2 (directing the trial court and parties to "[s]et out the material allegations of the petition/motion regarding grounds for termination of parental rights"). As proposed, Jury Instruction # 8 contained a verbatim recitation of all the factual allegations appearing on the second and third pages of the Amended Petition filed December 18, 2018:
INSTRUCTION #8
Statement of the Case
This trial is the result of an amended petition filed by the State of Oklahoma asking for the termination of parental rights.
The State alleged in the amended petition the following as to TAYLOR FALYN AINSWORTH HUDSON:
That TAYLOR FALYN AINSWORTH HUDSON is the MOTHER of C[.]H[.], C[.]H[.], E[.]H[.] AND K[.]H[.];
That the children, C[.], C[.], E[.] and K[.], are deprived as to their Mother for the following conditions:

That the Mother has failed to provide the proper parental care and guardianship necessary for the children's physical and mental well-being;
That the home of the Mother is unfit due to heinous and shocking physical abuse; 

That the half-sibling, R[.], was observed to have bruising to a majority of his body;
That R[.] disclosed physical and mental abuse by Mother and Father;
That a CHO-25 was filed due to R[.]'s injuries being consistent with non-accidental trauma;
That the Mother is charged in Oklahoma County CF-2018-4283 with Child Abuse;
That the home of the Mother is unfit due to threat of harm;

That it is reported that the Mother has a history of physically abusing the children;
That the home of the Mother is unfit due to failure to protect;

That the Mother has failed to ensure her children live in a home free from abuse and neglect;
That the State seeks to terminate the parental rights of the Mother, TAYLOR FALYN AINSWORTH HUDSON, pursuant to 10A O.S. Â§ 1-4-904 (A) and (B) (9) for heinous and shocking abuse to a sibling;
The State alleged in the amended petition the following as to CODY WAYNE HUDSON:

That CODY WAYNE HUDSON is the FATHER of C[.]H[.], C[.]H[.], E[.]H[.] AND K[.]H[.];
That the children, C[.], C[.], E[.] and K[.], are deprived as to their Father for the following conditions:

That the Father has failed to provide the proper parental care and guardianship necessary for the children's physical and mental well-being;
That the home of the Father is unfit due to heinous and shocking physical abuse; 

That the half-sibling, R[.], was observed to have bruising to a majority of his body;
That R[.] disclosed physical and mental abuse by Ms. Hudson and Father;
That a CHO-25 was filed due to R[.]'s injuries being consistent with non-accidental trauma;
That the Father is charged in Oklahoma County CF-2018-4283 with Child Abuse;
That the home of the Father is unfit due to threat of harm;

That it is reported that the Father has a history of physically abusing the children;
That the home of the Father is unfit due to failure to protect;

That the Father has failed to ensure his children live in a home free from abuse and neglect;
That the State seeks to terminate the parental rights of the Father, CODY WAYNE HUDSON, pursuant to 10A O.S. Â§ 1-4-904 (A) and (B)(9) for heinous and shocking abuse to a sibling;
These allegations are not evidence in the case.
_______________________________________________
OUJI Juv-2.2
[17]
Thus, because of how the State drafted its pleading, Jury Instruction # 8 included allegations about the pending charges against Parents, but it explicitly identified them as what "[t]he State alleged" and included a disclaimer that "[t]hese allegations are not evidence in the case,"
[18] as recommended in Juvenile Instruction No. 2.2. See OUJI-Juv. # 2.2 ("The allegations in the petition/motion are not evidence in the case."). Upon consideration, the trial court overruled Parents' objections to Jury Instruction # 8 with "reference [to] The Court's ruling previous in the motion in limine" and instructed the jury as set forth above.[19]
II. THE MAJORITY APPLIES THE WRONG STANDARD OF HARMLESS ERROR REVIEW
Â¶
6 The majority applies the wrong standard of harmless error review based upon their foregone conclusion that admission of evidence of the pending criminal charges is so inherently prejudicial that Parents could not obtain a fair trial in this termination-of-parental-rights proceeding--as if the ends justify the means. In order to reach their desired result, the majority ends up applying a standard of harmless error review that Parents did not invoke and that a majority of this Court did not think applicable until rehearing--i.e., the standard of harmless error review applicable to constitutional errors, or what the majority refers to as "[e]rrors that are inherently prejudicial" because they undermine the constitutional guarantee of due process. See Majority Op. Â¶Â¶ 27, 29. The majority's use of the harmless error standard applicable to constitutional errors is outcome-determinative in this appeal, as it shifts the burden on appeal from Parents to the State.
Â¶7 As the majority explains, title 12, section 78 and title 20, section 3001.1 of the Oklahoma Statutes are Oklahoma's harmless error statutes. See Majority Op. Â¶Â¶ 25, 30. Section 78 provides: "The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." 12 O.S.2011, Â§ 78. Section 3001.1 provides: "No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or for error in any matter of pleading or procedure, unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." Although the terms of these statutory provisions apply to all errors where a proper objection is made at trial, we have established two different standards for harmless error review; the determination of which standard to apply in a particular case depends upon which of two types of error is involved.[20] For non-constitutional errors--which the majority refers to as "errors that are not inherently prejudicial," Majority Op. Â¶ 28--the standard for harmless error review is the prejudice test, which requires the appellant to demonstrate "that the verdict would have been different had [the errors] not occurred, as measured by the usual criterion of the verdict's support in the evidence." Id. (alteration in original) (quoting Karriman v. Orthopedic Clinic, 1973 OK 141, Â¶ 21, 516 P.2d 534, 540). But for constitutional (or "inherently prejudicial") errors, the standard for harmless error review presumes prejudice unless the appellee can demonstrate "affirmatively . . . that no harm resulted" from the error. Id. Â¶ 29 (quoting Roberts v. Lewis, 1968 Â¶ 19, 441 P.2d 350, 355).[21]
Â¶8 On rehearing, the majority has chosen to deem the alleged errors "inherently prejudicial" and to apply the heightened standard of harmless error review that is reserved for constitutional errors. Thus, rather than Parents bearing the burden of proving that the verdict would have been different had the trial court's evidentiary error not occurred, see Karriman, 1973 OK 141, Â¶ 21, 516 P.2d at 540, the State now faces a presumption of prejudice and bears the burden of proving "affirmatively . . . from the record that no harm resulted" from the alleged evidentiary and jury instruction errors. On rehearing, the deck is now stacked against the State.
Â¶9 But the majority should recall that Parents never invoked this heightened standard of harmless error review until rehearing. Indeed, in their appellate briefs both Parents invoked the harmless error analysis applicable to non-constitutional (or "not inherently prejudicial") errors:

With respect to the introduction of evidence over Mother's objection, the standard of review was summarized in Johnston v. Stacy, 2016 OK CIV APP 56, Â¶ 5, 380 P.3d 908, 910, where the court stated:
. . . The injection of irrelevant or otherwise inadmissible evidence is ordinarily not grounds to reverse a jury verdict unless that error was prejudicial." James v. Midkiff, 1994 OK CIV APP 165, Â¶ 6, 888 P.2d 5 (citing 12 O.S. Â§ 78; and Karriman v. Orthopedic Clinic, 1973 OK 141, 516 P.2d 534). "The test of prejudice is the likelihood the verdict would have been different had the error not occurred measured by the usual criterion of the verdict's support in the evidence." Id.
Mother's Br. 16; see also Father's Br. 7 (quoting Johnston, 2016 OK CIV APP 56, Â¶ 5, 380 P.3d at 910). Parents then applied the test of prejudice and argued that the jury's verdict would have been different had the error not occurred:
Given the complete lack of competent evidence to support a finding by clear and convincing evidence that 'heinous and shocking abuse' had occurred, it can only be concluded that the introduction of irrelevant evidence related to the criminal charges against Mother and Father changed the verdict that would have otherwise been rendered. The jury in all likelihood, despite the lack of evidence to support the State's case, determined that Mother and Father were going to be imprisoned on the criminal charges in the future anyway, causing them to improperly render a verdict terminating Mother's parental rights. Because the verdict was likely different than it would otherwise have been as a result of the introduction of the irrelevant evidence, this evidentiary error presents an additional reason why the termination of Mother's parental rights must be reversed.
Mother's Br. 16; see also Father's Br. 10; Mother's Reply Br. 9. Consequently, this Court in its first opinion observed that "[n]either parent argues a substantial violation of a constitutional right," applied the prejudice test applicable to non-constitutional errors, and concluded that the outcome in the case would not have been any different because "there was overwhelming evidence about repetitive abuse to both R.H. and B.H." In re K.H., 2020 OK 32, Â¶Â¶ 18--19. And this analysis garnered a 7-2 majority of this Court.
Â¶10 Nevertheless, in their Petition for Rehearing, Parents realized their shortcoming in invoking the standard of harmless error review for non-constitutional errors, and now they do argue substantial violations of constitutional rights:
Mother's sacred and constitutionally protected right to her children has been trampled by the State in this case. This Court cannot allow that to stand.
Mother's Pet. for Reh'g 3, and, without reference to a specific page in their appellate briefs or the record on appeal:
Appellant has argued from the beginning of his case, during the trial and this appeal, that the admission of this evidence was extremely prejudicial, which were violations of the U.S. Constitution and the Oklahoma Constitution. It is axiomatic that a parent has a fundamental right to the care, custody, companionship and management of his or her child, and that this right is protected by both the Federal and State Constitutions. 

A book titled Child Welfare Law and Practice: Representing Children, Parents, and State Agencies in Abuse, Neglect and Dependency Cases, 3rd Edition (2016), by Donald N. Duquette, Ann M. Haralambie & Vivek S. Sankaran, General Editors, addresses the issue of termination of parental rights, as follows: "[w]hen a state seeks to permanently terminate the legal relationship between a parent and a child -- frequently known as termination of parental rights or TPR -- the Due Process Clause provides further protections to prevent erroneous terminations.... Id. at Â§ 16.5.6, p.414, Â¶ 1.

. . . .
. . . Any violation of the U.S. Constitution and the Oklahoma Constitution, is not "harmless error." All parents have basic constitutional rights to the care, custody, and control of their children and rights to a fair trial, but admitting evidence of that nature without a conviction, is not only extremely prejudicial, but unconstitutional as well. Therefore, this Court's ruling should be deemed as reversible error and remanded for a new trial.
Father's Pet. for Reh'g 9, 11. Despite Parents arguably having waived such arguments, see, e.g., City of Oklahoma City v. State ex rel. Okla. Dep't of Labor, 1995 OK 107, Â¶ 4, 918 P.2d 26, 32 (suppl. op. on reh'g) (per curiam) ("[N]on-jurisdictional issues, pressed for the first time on rehearing, are generally unfit for review." (citing Brigance v. Velvet Dove Rest., 1988 OK 68, Â¶ 16, 756 P.2d 1232, 1235; Pirrong v. Pirrong, 1976 OK 36, Â¶Â¶ 4--6, 552 P.2d 383, 387 (on reh'g); Pointer v. Hill, 1975 OK 73, Â¶ 15, 536 P.2d 358, 361; Brown v. State Election Bd., 1962 OK 36, Â¶ 49, 369 P.2d 140, 151, later overruled on other grounds by Alexander v. Taylor, 2002 OK 59, 51 P.3d 1204; Hope v. Peck, 1913 OK 472, Â¶ 2, 134 P. 33, 33)), the majority has taken the bait and granted rehearing.
Â¶11 But Parents' new arguments and the majority's recitation of the standard of review are little more than an attempt to concoct a constitutional error where none exists. No one can point to a constitutional guarantee that pending criminal charges won't be admissible in a termination-of-parental-rights case arising out of the same occurrence.[22] The majority evidently thinks they can create a constitutional error by sprinkling in a little bit of the substantive due process right of parents to direct the upbringing and education of children, see Majority Op. Â¶ 26 (invoking a parent's "constitutionally protected liberty interest in the continuity of the legal bond with [her] children" (quoting In re A.M. & R.W., 2000 OK 82, Â¶ 8, 13 P.3d 484, 487)), with a little bit of the procedural due process right to an impartial jury, see id. Â¶ 27 (invoking the due process right to "[a]n impartial jury" (citing Cary v. ONEOK, Inc., 1997 OK 60, Â¶ 15 n.33, 940 P.2d 201, 212 n.33 (Opala, J., dissenting))). But their incantation of these constitutional rights does not change the fact that the trial court's alleged evidentiary errors only violate an evidentiary rule that is statutorily codified but not constitutionally enshrined.
Â¶12 Whether it be the admission of irrelevant evidence in violation of section 2402 or the admission of unfairly prejudicial evidence in violation of section 2403 of the Oklahoma Evidence Code, the trial court's evidentiary error is non-constitutional. Numerous other courts have reached the same conclusion.[23] Perhaps most importantly, in considering an evidentiary error in violation section 2403, the Oklahoma Court of Criminal Appeals has held that "[a]dmitting evidence that is more prejudicial than probative is subject to a harmless error analysis." Willis v. State, 2017 OK CR 23, Â¶ 21, 406 P.3d 30, 35 (citing Robinson v. State, 2011 OK CR 15, Â¶ 4, 255 P.3d 425, 428). Recognizing that prejudice under section 2403 should not be conflated with prejudice to the verdict, the Court of Criminal Appeals was able to find not only that the evidence at issue "was fairly prejudicial" but also that the defendant was not prejudiced by a different outcome in the case, mainly due to the existence of "Appellant's admission of the charged offense and other strong evidence of guilt."[24] Id. The Tenth Circuit has similarly held that "errors under Rule 403 [of the Federal Rules of Evidence] are reviewed under the non-constitutional harmless error analysis."[25] United States v. Denezpi, 979 F.3d 777, 784 (10th Cir. 2020) (citing United States v. Cristerna-Gonzalez, 962 F.3d 1253, 1266-67 (10th Cir. 2020)), cert. filed on other grounds, No. 20-7622 (U.S. Mar. 26, 2021). The Tenth Circuit's characterization of such errors as non-constitutional is typical for federal courts.[26] Lastly, at least one other court has concluded that the injection of evidence about parents' pending criminal charges in a termination of parental rights hearing was "harmless error" in light of the "sufficient admissible evidence justifying [the] termination decision." State ex rel. Z.M., 2014 UT App 118, Â¶ 6, 327 P.3d 1220, 1222.
Â¶13 The majority's application of the harmless error standard applicable to constitutional errors is puzzling. Constitutional errors typically involve such egregious missteps as failing to provide defense counsel in violation of the Sixth Amendment right to counsel, Robinson, 2011 OK CR 15, Â¶ 3, 255 P.3d at 428; Gideon v. Wainwright, 372 U.S. 335 (1963); failing to ensure an unbiased trial judge in violation of the Fifth and Fourteenth Amendment rights to due process, Robinson, 2011 OK CR 15, Â¶ 3, 255 P.3d at 428; Tumey v. Ohio, 273 U.S. 510 (1927); allowing a jury to see the defendant in shackles in violation of his due process rights, Deck v. Missouri, 544 U.S. 622, 627--28 (2005); improper comment upon a defendant's silence at trial in violation of the Fifth Amendment right not to self-incriminate, United States v. Hasting, 461 U.S. 499, 510--11 (1983); and admission of evidence obtained in violation of the Fourth Amendment, Chambers v. Maroney, 399 U.S. 42, 52--53 (1970). See generally Neder v. United States, 527 U.S. 1, 7--8 (1999) (listing constitutional errors that are considered structural and thus defy analysis by harmless error standards and require automatic reversal); Arizona v. Fulminante, 499 U.S. 279, 306--07 (1991) (listing constitutional errors that are subject to harmless error review). These constitutional errors are so "inherently prejudicial" that they should be subjected to a higher standard of review. But comparing the constitutional errors just listed to the trial court's alleged errors here in admitting the criminal information and Parents' testimony about pending charges is like comparing apples to oranges. The alleged evidentiary errors in this case just don't rise to the same level of inherent prejudice--particularly in light of Parents' testimony that they have not been convicted.
Â¶14 But besides the majority's erroneous application of the standard of review in this case, I am also concerned the majority will mislead appellate courts to apply the wrong standard of review in other cases. In discussing what triggers the heightened standard of review for "inherently prejudicial errors," the majority gives no clear guidance. If the heightened standard of review is triggered when a "substantial right" is affected, then what substantial right(s) triggered it here? Is the substantial right being implicated in this case the "constitutionally protected liberty interest in the continuity of [Parents'] legal bond with their children"? See Majority Op. Â¶ 26 (quoting In re A.M. & R.W., 2000 OK 82, Â¶ 8, 13 P.3d at 487). Or perhaps it's Parents' due process right to "[a] fair trial in a fair tribunal" and to "[a]n impartial jury"? See id. Â¶ 27 (quoting Cary, 1997 OK 60, Â¶ 15 n.33, 940 P.2d at 212 n.33 (Opala, J., dissenting)). Or maybe it's both? But the lack of clear guidance could lead to preposterous results. Any and every evidentiary error in a termination-of-parental-rights trial could be construed as a constitutional error that is subject to the much higher standard of harmless error review. That can't be right.
III. EVIDENCE OF HEINOUS AND SHOCKING ABUSE IS OVERWHELMING, MAKING
THE ALLEGED ERRORS HARMLESS
Â¶15 Having established what the appropriate standard of harmless error review is, all that remains is to demonstrate why both the trial court's admission of evidence about the felony child-abuse charges and its reference in Jury Instruction # 8 to the pending criminal charges is harmless error. Because the trial court's admission of evidence about the pending criminal charges is a non-constitutional error, the applicable standard for harmless error review is the prejudice test, which requires the appellant to demonstrate "that the verdict would have been different had [the errors] not occurred, as measured by the usual criterion of the verdict's support in the evidence." Majority Op. Â¶ 28 (alteration in original) (quoting Karriman, 1973 OK 141, Â¶ 21, 516 P.2d at 540). Looking at the verdict's support in evidence will show not only why the alleged errors are harmless but also why there was clear and convincing evidence in support of the verdict, all of which goes to demonstrate that the district court's judgment should be affirmed.
Â¶16 Upon reviewing the evidence presented at trial, it becomes abundantly clear that the prosecution's introduction of the criminal information and questioning of Parents about their pending criminal charges was harmless for three reasons.
Â¶17 First, laying aside the evidence allegedly admitted in error, the jury's finding of heinous and shocking abuse of a sibling was supported by an overwhelming amount of evidence. Because Parents only challenged on appeal the sufficiency of the evidence relating to whether the abuse of R.H. was heinous and shocking and have argued that the erroneously admitted evidence about pending criminal charges must be the only basis for the jury's verdict terminating parental rights, see Mother's Br. 16--23; Father's Br. 10, 14--18, Parents have conceded all other elements that must be met in order to terminate parental rights. Thus, we need only review the evidence in support of this particular finding that the abuse was heinous and shocking. As the trial court properly instructed the jury:
"Heinous and shocking abuse" includes, but is not limited to, aggravated physical abuse that results in serious bodily, mental, or emotional injury. "Serious bodily injury" means injury that involves:

a. a substantial risk of death,
b. extreme physical pain,
c. protracted disfigurement,
d. a loss or impairment of the function of a body member, organ, or mental faculty,
e. an injury to an internal or external organ or the body,
f. a bone fracture,
g. sexual abuse or sexual exploitation,
h. chronic abuse including, but not limited to, physical, emotional, or sexual abuse, or sexual exploitation which is repeated or continuing,
i. torture that includes, but is not limited to, inflicting, participating in or assisting in inflicting intense physical or emotional pain upon a child repeatedly over a period of time for the purpose of coercing or terrorizing a child or for the purpose of satisfying the craven, cruel, or prurient desires of the perpetrator or another person, or
j. any other similar aggravated circumstance.[27]
In this case there is overwhelming evidence of "aggravated physical abuse that resulted in serious bodily . . . [and] emotional injury."
Â¶18 The most relevant exhibits the State introduced are (1) sixteen photographs of R.H.'s injuries taken during the August 27, 2018, medical examination at OU Children's Physicians Child Abuse Services; (2) medical records from that medical examination; and (3) video footage from a forensic interview of R.H. conducted that same day. The photographs show bruises on both upper eyelids
[28]; a bruise on the right ear[29]; large bruises on both cheeks[30]; stippled bruising on the left side of his neck,[31] indicative of strangulation; multiple bruises around his torso[32]; multiple bruises on both arms[33]; a bite mark on his right forearm[34]; and a bruise on his left knee.[35] The medical records contain the medical examiner's notes describing the same injuries and summarizing R.H.'s statements from the videotaped forensic interview for purposes of medical diagnosis, including statements that Parents "gave him a wooping [sic] yesterday in which they hit him with a belt, hand and wet [h]and . . . because he was not listening"; that Parents "both slapped him, hit him with a spatula, hit him in the face with a belt, tied him up with a belt and today . . . put him in their washing machine, covered him with a blanket and told him to be quiet"; and that Mother "choked him so that he couldn't breathe, bit him, stepped on him and poked his eye."[36] The videotaped forensic interview also showed R.H. referring to the fact that Father "went to jail today," that Mother would push and poke R.H.'s eyes really hard, and that Father frequently spanked R.H., which sometimes left bruises.[37]
Â¶19 Numerous witnesses at trial also offered relevant testimony. R.H. testified in person that, on multiple occasions when he failed to finish his homeschooling work before Mother arrived home from her job, Mother hit or kicked him in the stomach or head and called him a "retard."
[38] R.H. also testified that Parents hit his brother, B.H., "too much" and everywhere on his body, sometimes with a shoe, or a belt, or bare hands, and that they would leave red marks on both arms, "his face, his body, mostly everywhere, except his -- like, right here where you put your shoe on. Yeah, sometimes, they would hit him -- sometimes, they would step on his foot and he would cry."[39] R.H. also testified about being denied anything to drink, having to drink only when he took a shower, being given only oatmeal to eat despite expressing his dislike for it, and being forced to eat oatmeal off the floor after he had vomited it.[40] Dr. Mary Stockett with OU Children's Hospital testified that she examined R.H. on August 27, 2018, and observed "extensive bruising involving his eyes, his other portions of his face, his ear, his neck, his trunk, both the front of his trunk and the back of his trunk, his legs and his arms," as well as "some bruises anterior to his ear . . . [that] you can't see . . . on the picture."[41] Dr. Stockett diagnosed R.H. with both physical and psychological abuse.[42] Sergeant Zachary Peabody with the Midwest City Police Department testified that he went to Parents' home on August 27, 2018, due to "a call of possible child abuse or neglect," that Parents lied to him and other police officers about R.H. being at the house of Mother's mother, and that he eventually found R.H. hidden under a blanket inside the washing machine.[43] Sgt. Peabody also testified, without objection, to the fact that Father "said that he was the one who had done" the abuse and "was taken into custody and transported to the police station."[44] B.H., who was Father's son from a prior relationship and R.H.'s brother, testified that Mother repeatedly choked him with her hands so that he couldn't breathe, hit him in the stomach and head, put his head in the toilet, and didn't allow him to eat or to drink or to use the bathroom.[45] B.H. also testified that Father would use a spatula or his hands to hit B.H. all over to the point of bruising.[46] B.H. also corroborated R.H.'s testimony about being forced to eat food that they threw up.[47] Katey Walker, the maternal aunt of R.H. and B.H., testified that, while her nephews were staying at Parents' house, she noticed them losing weight dramatically, having black under their eyes all the time, always having marks and bruises, becoming sad and emotionless, and becoming very deferential to Father when answering her questions on the telephone.[48] Ms. Walker also testified that, as time progressed, Parents allowed her less and less access to the boys via phone calls and video chats.[49] Now that the boys live with her, Ms. Walker described R.H. as "emotional, sad, very depressed" and B.H. as "more of just angry."[50] Alysha Dawson, an employee of the Oklahoma Department of Human Services, offered unobjected-to testimony about police investigating Mother and trying to decide whether to press charges against her.[51] Mother's mother, Lorinda Spight, nÃ©e Ainsworth, testified that she remembers Mother saying she hated R.H. and B.H. within the boys' hearing.[52] Ms. Spight also recalled seeing marks and bruises on the boys fairly often, which made her wonder, "[W]hat in the world's going on over there[?]"[53]
Â¶20 Although Parents offered testimony that attempted to explain away each concern raised by these witnesses, their credibility had been drawn into question because they hid R.H. in a washing machine and lied to police about R.H.'s whereabouts.
Â¶21 Taken altogether, the exhibits and testimony demonstrate that the abuse of R.H. was "heinous and shocking." There is clear and convincing evidence of injuries to R.H.'s eyes and right ear that would support findings of "an injury to an . . . external organ" under 10A O.S.Supp.2017, Â§ 1-1-105(34)(e). That, in turn, supports a finding of "aggravated physical abuse that results in serious bodily . . . injury" and the jury's ultimate conclusion that the abuse of R.H. was "heinous and shocking." Similarly, there is clear and convincing evidence that Parents subjected R.H. and B.H. to "chronic abuse including, but not limited to, physical[ and] emotional . . . abuse . . . which is repeated or continuing" under section 1-1-105(34)(h), which serves as another basis for determining that the abuse of R.H. was "heinous and shocking." The sufficiency of the evidence demonstrates an independent basis for the jury's verdict, and the overwhelming extent of the evidence demonstrates why any error in admitting the criminal information and testimony about pending criminal charges is harmless.
Â¶22 Second, taking a holistic approach to the testimonial evidence about the pending criminal charges, most of the prejudice posed by such evidence was substantially mitigated by the prosecution's questions clarifying that Parents have not been convicted. Immediately after asking Mother about the pending criminal charges and the criminal information, the State asked, "But this is not resolved? You're not convicted or found guilty?" See supra note 13. And Mother responded, "I am not." Id. When asked if his charges were resolved, Father responded, "No, it's not." Id. Rather than ending on a high note about criminal charges, Parents got to make the point that the charges were just that--charges. They weren't substantiated yet. Viewed in that light, any prejudice seems rather slight.
Â¶23 Third, evidence about the pending charges was only cumulative in light of both the testimony about Parents' arrests and the overwhelming evidence of heinous and shocking abuse, and the erroneous admission of cumulative evidence is always harmless. In the face of unobjected-to testimony from Sgt. Peabody about Father being "taken into custody and transported to the police station," statements from R.H. that Father "went to jail today" and that Mother inflicted some of the physical abuse, and the unobjected-to testimony from Ms. Dawson that Mother was being investigated for the purpose of potentially filing criminal charges, see supra notes 35--36, 42 & 49 and accompanying text, evidence of the pending criminal charges was cumulative. Even if the jurors hadn't heard specific testimony about pending criminal charges or seen the criminal information, they could put two and two together. It seems strange that the majority thinks we can keep jurors in the dark, as if jurors are naÃ¯ve--particularly in a case where the evidence of shocking and heinous abuse is overwhelming.
Â¶24 Lastly, with respect to the alleged instructional error, the majority acknowledges that "[w]e may not set aside a verdict for misdirection of the jury unless the error 'has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.'" Majority Op. Â¶ 30 (quoting 20 O.S.2011, Â§ 3001.1). Based upon the foregoing analysis, evidence about the pending criminal charges was not so prejudicial or confusing as to affect the outcome of the case. Moreover, the trial court clearly instructed the jury that Jury Instruction # 8 contained the State's allegations and that "[t]hese allegations are not evidence in the case," see supra notes 17--18 and accompanying text, thereby mitigating any prejudice caused by mention of the pending criminal charges. The trial court also clearly instructed the jury on the essential elements necessary for termination of parental rights due to heinous and shocking abuse of a sibling, see ROA, p.00178, Jury Instr. # 12, at 1, as well as what constitutes "heinous and shocking" abuse, ROA, p.00180, Jury Instr. # 14, at 1. The trial court had faith that the jury would follow these jury instructions and not conclude that the abuse was shocking and heinous because of the pending criminal charges. See supra note 10 and accompanying text. Absent any evidence to the contrary, we must assume the jury followed those instructions in reaching its verdict that is well supported by the evidence. McDonald v. Cobb, 1915 OK 967, Â¶ 5, 153 P. 138, 138 (per curiam); accord Malone v. State, 1994 OK CR 43, Â¶ 5, 876 P.2d 707, 711 (citing Price v. State, 1989 OK CR 74, Â¶ 18, 782 P.2d 143, 148); United States v. Griffin, 389 F.3d 1100, 1105 (10th Cir. 2004) (citing United States v. Chanthadara, 230 F.3d 1237, 1251 (10th Cir. 2000)).
IV. CONCLUSION
Â¶25 The majority's application of a heightened standard of harmless error review could revolutionize appellate review in termination-of-parental-rights cases. At the very least, it leads to the wrong result in this case. Parents waived application of the heightened standard by failing to invoke any constitutional error prior to rehearing. Moreover, the admission of evidence that is more prejudicial than probative is a non-constitutional error subject to reversal only if Parents can show the verdict would have been different had the error not occurred. Because the overwhelming amount of evidence at trial demonstrates Parents engaged in heinous and shocking abuse against R.H., we should conclude that the verdict is supported by clear and convincing evidence and that the alleged evidentiary and instructional errors are harmless. I respectfully dissent from the majority's opinion reversing the trial court's judgment and remanding for a new trial.
FOOTNOTES
[1] This matter actually involves two appeals--i.e., Mother's appeal in Case No. 118,035 and Father's appeal in Case No. 118,078--that have been made companion cases pursuant to Rule 1.27(d) of the Oklahoma Supreme Court Rules. See Order Sheet 1, July 3, 2019. Consequently, there are separate records for each appeal, except for the trial transcripts and exhibits. The original trial transcripts and exhibits were filed in Case No. 118,035 only. For the sake of simplicity, in this dissenting opinion, any reference or citation to the "record on appeal" or "ROA" is a reference or citation to the record on appeal in Case No. 118,035 unless otherwise specified.
[2] ROA, pp.00144--00145, Mother's Mot. In Limine 1--2, May 6, 2019.
[3] ROA, p.00238, Trial Tr. vol. 1, 4:24--:25, May 7, 2019.
[4] Id. at 5:5--:8; see also id. at 7:17--:20, 8:5--:8 ("It's not probative, again, whether they were arrested, whether they were charged particularly is not probative of any issue this jury has to decide. . . . [The fact] that they've been arrested and charged . . . [is] not anything that's going to affect one way or the other, or should affect one way or the other, the decisions that the jury has to make in this case.").
[5] Id. at 5:9--:18; see also id. at 8:13--:14 ("So it really, I think, is -- is -- would be highly prejudicial to my client and to Mr. Hudson to have this evidence come in.").
[6] See id. at 5:20--:25.
[7] Id. at 6:9--:17.
[8] Id. at 6:21--:23.
[9] Id. at 6:18--:19.
[10] See generally OUJI-Juv. # 3.11.
[11] Id. at 8:25--9:6, 9:22--10:23.
[12] The Information states:
IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OKLAHOMA, COMES NOW DAVID W. PRATER THE DULY ELECTED, QUALIFIED AND ACTING DISTRICT ATTORNEY IN AND FOR OKLAHOMA COUNTY, DISTRICT NO. 7, STATE OF OKLAHOMA, AND ON HIS OFFICIAL OATH INFORMS THE DISTRICT COURT THAT
COUNT 1: ON OR ABOUT THE 27TH DAY OF AUGUST, 2018, 
A.D., THE CRIME OF CHILD ABUSE WAS FELONIOUSLY COMMITTED IN OKLAHOMA COUNTY, OKLAHOMA, BY CODY WAYNE HUDSON AND TAYLOR AINSWORTH, WHO ACTING JOINTLY, WILFULLY OR MALICIOUSLY INJURED, TORTURED, MAIMED OR USED UNREASONABLE FORCE UPON A CHILD UNDER THE AGE OF EIGHTEEN (18) YEARS OF AGE, TO WIT: R.H., WHO WAS AT THE TIME NINE (9) YEARS OF AGE, BY CODY WAYNE HUDSON AND TAYLOR AINSWORTH CONJOINTLY STRIKING R.H. MULTIPLE TIMES ABOUT HIS ENTIRE BODY CAUSING BRUISING, CONTRARY TO THE PROVISIONS OF SECTION 843.5 OF TITLE 21 OF THE OKLAHOMA STATUTES, AND AGAINST THE PEACE AND DIGNITY OF THE STATE OF OKLAHOMA.
ROA, p.00242, State's Ex. 1, at 1. The second page of the Information listed fourteen potential witnesses, including six witnesses who testified at the termination-of-parental-rights trial and eight witnesses who did not. Id. at 2.
The Affidavit of Probable Cause from Sergeant Carissa Southern with the Midwest City Police Department relating to Father's arrest contained hearsay about the police investigation at Parents' home on August 27, 2018. Id. at 3. Sgt. Southern was not called as a witness at the termination-of-parental-rights trial, but the hearsay contained in her affidavit was entirely cumulative of testimony that Sgt. Zachary Peabody and Lorinda Spight, nÃ©e Ainsworth, gave at the termination of parental rights trial. Compare id., with ROA, p.00239, Trial Tr. vol. 2, 198:22--205:22, May 8, 2019; ROA, p.00240, Trial Tr. vol. 3, 214:22--218:7, May 9, 2019.
Similarly, the Affidavit of Probable Cause from Detective Tim Blanton relating to Mother's arrest contained hearsay about the police investigation and the subsequent forensic interview of R.H. that identified Mother as someone who inflicted physical abuse, and Det. Blanton did not testify at the termination of parental rights trial. ROA, p.00242, State's Ex. 1, at 6--7. But the hearsay contained in his affidavit was entirely cumulative of video evidence from the forensic interview and of testimony given by Sgt. Peabody, Mrs. Spight, and Amy Baum, a social worker at OU Children's Hospital who conducted the forensic interview of R.H. Compare id., with ROA, p.00239, Trial Tr. vol. 2, supra, at 94:9--96:23, 99:24--102:22, 198:22--205:22; ROA, p.00240, Trial Tr. vol. 3, supra, at 214:22--218:7; ROA, p.00242, State's Ex. 6.
[13] The specific colloquy with Mother is as follows:
Q Are you criminally charged because of what happened?
A Yes.

MR. OWENS: Your Honor, I'm going to reassert our prior objection from the motion in limine.
THE COURT: Certainly.
MR. OWENS: And would ask for a continuing objection.

THE COURT: Certainly. Objection's overruled.

Q (By Ms. Rivera) Were you arrested?
A I was.
Q When were you arrested?
A I believe it was the 28th or 29th of August.
Q And how long were you in jail?
A A week.
Q What are you charged with?
A Child abuse.

MS. RIVERA: May I approach the witness, Your Honor?
THE COURT: You may.

Q (By Ms. Rivera) I want to hand you what's marked as State's Exhibit 1. Have you seen that document before?
A I don't believe I've seen this before.
Q Is your name on the document?
A It is.
Q But you've never seen it?
A I don't recall seeing it, no.
Q Okay. But in looking through that document, do you recognize what it would be?
A I'm -- I would assume charges against me. I'm not sure what it would be, no.
Q Okay. But looking through there, you see --
A An affidavit.
Q Okay. But it talks about the criminal case?
A It does.
Q And it mentions you?
A It does.
Q And what date does it talk about?
A August 27th, 2018.

MS. RIVERA: Your Honor, The State would move to admit State's Exhibit 1, the information from CF-2018-4283.
THE COURT: And other than the objection that you made earlier, is there any other objection?
MR. OWENS: It's subject to our continuing objection. No objection, other than that.
THE COURT: Okay. Mr. Cusher?
MR. CUSHER: Father would second that objection, Your Honor, and also assert a continuing objection.
THE COURT: All right. Fair enough. The State's Exhibit No. 1 will be admitted over the objections of both respondent parents.
MS. RIVERA: Thank you, Your Honor.

Q (By Ms. Rivera) So in looking at this document, it talks about the date and then it talks about the crime of child abuse, correct?
A Yes, ma'am.
Q And it doesn't say R[.H.]'s name but gives his initials?
A Yes. 
Q And talks about him being 9 years old at the time?
A Yes.
Q Okay. So in looking at this document, does it reflect what you're criminally charged with?
A It does.
Q Okay. But this is not resolved? You're not convicted or found guilty?
A I am not.
ROA, p.00239, Trial Tr. vol. 2, supra note 12, 24:9--26:2.
The specific colloquy with Father is as follows:
Q Okay. And what happened after you talked to them [i.e., the police]?
A They arrested me.
Q And how long were you in jail?
A Five days.
Q How did you get out?
A I bonded.
Q Were you out first or your wife?
A I was.
Q Are you criminally charged also?

MR. CUSHER: Your Honor, I would just raise the same continuing objection.
MR. OWENS: The same, Your Honor.
THE COURT: I'll note the objection. And based upon my prior ruling, I'll overrule it.
MS. RIVERA: May I approach the witness, Your Honor?
THE COURT: You way [sic].

Q I want to hand you what's marked as State's Exhibit 1. Have you seen that document before?
A No.
Q Is your name on there?
A Yes, ma'am.
Q Okay. Does it talk about August 27th?
A Yes.
Q Okay. Does it talk about the charge of child abuse?
A Yes.
Q And does it talk about R[.H.], though it gives his initials?
A Yes.
Q Who was nine at the time, correct?
A Yes.
Q Is this your understanding of what you're criminally charged with?
A Yes.
Q Okay. Your case is not resolved yet either, correct?
A No, it's not.
Id. at 46:3--47:12.
[14] ROA, p.00241, Trial Tr. vol. 4, 53:5--:10, May 10, 2019.
[15] Id. at 53:23--:24.
[16] See ROA, pp.00172--00174, Jury Instr. # 8, at 1--3 (citing OUJI-Juv. # 2.2).
[17] Id.; see also ROA, pp.00066 (back)--00067, Am. Pet. 2--3.
[18] ROA, p.00174, Jury Instr. # 8, at 3.
[19] ROA, p.00241, Trial Tr. vol. 4, supra note 14, at 53:25--54:2, 57:19--59:19; see also ROA, pp.00172--00174, Jury Instr. # 8, at 1--3.
[20] Incidentally, the Oklahoma Court of Criminal Appeals has recognized a third type of error, which it calls a "structural" error because it affects or pervades the entire trial from beginning to end, "such as the absence of counsel for a defendant, a biased judge, the unlawful exclusion of members of the defendant's race from a grand jury, the right to self-representation at trial, and the right to a public trial." Robinson v. State, 2011 OK CR 15, Â¶Â¶ 2--3, 255 P.3d 425, 427--28 (quoting Golden v. State, 2006 OK CR 2, Â¶ 15, 127 P.3d 1150, 1154). Such structural errors defy and are not subject to harmless error review. Phillips v. State, 1999 OK CR 38, Â¶ 67, 989 P.2d 1017, 1036 (quoting Arizona v. Fulminante, 499 U.S. 279, 310 (1991)).
[21] This differential method for handling errors isn't so different from the federal standards of harmless error review. For non-constitutional errors, federal courts "apply the harmless-error analysis of Kotteakos v. United States, 328 U.S. 750, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946), pursuant to which a non-constitutional error is harmless unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." United States v. Griffin, 389 F.3d 1100, 1104--05 (10th Cir. 2004). For constitutional errors, some are considered "fundamental constitutional errors" because they "affect substantial rights"; they are considered "so intrinsically harmful" that they "require automatic reversal . . . without regard to their effect on the outcome." Neder v. United States, 527 U.S. 1, 7 (1999); see also supra note 20 (discussing the class of "structural errors" recognized by the Oklahoma Court of Criminal Appeals that are not subject to harmless error review). "For all other constitutional errors, reviewing courts must . . . 'disregar[d]' errors that are harmless 'beyond a reasonable doubt.'" Id. (quoting Chapman v. California, 386 U.S. 18, 24 (1967)).
[22] Ordinarily, the termination-of-parental-rights case either progresses more slowly than the criminal case or gets stayed until after the criminal case is resolved, so that concerns about the parent's constitutional privilege against self-incrimination aren't implicated at the trial for termination of parental rights. See generally U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."); Okla. Const. art. II, Â§ 21 (same). But here, the criminal case has languished for three years despite constitutional guarantees of a speedy trial. See generally U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."); Okla. Const. art. II, Â§ 20 (same). Currently, Parents' criminal trial is set to commence September 13, 2021. See Order 1, State v. Hudson, No. CF-2018-4283 (Okla. Cty. Dist. Ct. May 7, 2021).
[23] Because the intersection of evidentiary rulings and due process concerns is more frequently encountered in criminal cases, this paragraph mainly looks at the standards of harmless error review applied in courts with criminal jurisdiction--i.e., the Oklahoma Court of Criminal Appeals and the federal courts. Such analysis seems particularly appropriate in light of this Court's acknowledgment that child deprivation proceedings are "substantially similar" to criminal proceedings because "[t]he state is the initiating party, the proceeding is formal, and the potential loss is quite substantial." In re Chad S., 1978 OK 94, Â¶ 13, 580 P.2d 983, 985--86 (quoting Davis v. Page, 442 F. Supp. 258, 264 (S.D. Fla. 1977)); cf. In re C.M., 2018 OK 93, Â¶ 26, 432 P.3d 763, 770 ("We review claims for ineffective assistance of counsel in termination proceedings under the same standard used in criminal trials.").
[24] In Willis, the evidence that the Court of Criminal Appeals deemed "fairly prejudicial" was testimony that the criminal defendant was an elementary school teacher. The defendant had been charged with soliciting sexual conduct with a minor by use of technology, but the minor involved in the offense had no connection to the defendant through school. Willis, 2017 OK CR 23, Â¶ 21, 406 P.3d at 35. Thus, testimony about the defendant's line of work had little probative value but created a substantial danger of unfair prejudice.
[25] In Denezpi, the Tenth Circuit found that, even if the trial court erred in admitting the sexual assault victim's testimony that the defendant had previously served time and had abused an ex-girlfriend, such error would be harmless because the challenged testimony did not discount the "overwhelming" evidence against the defendant nor have a substantial influence on the outcome. Denezpi, 979 F.3d at 784 (citing United States v. Rivera, 900 F.2d 1462, 1469 (10th Cir. 1990) (en banc)).
[26] See, e.g., Ermini v. Scott, 937 F.3d 1329, 1343 (11th Cir. 2019) ("Even if a district court abuses its discretion by admitting prejudicial character evidence, evidentiary error 'must [still] rise above the threshold of harmless error' to warrant reversal." (alteration in original) (quoting Perry v. State Farm Fire & Cas. Co., 734 F.2d 1441, 1446 (11th Cir. 1984)); United States v. Smith, 534 F.3d 1211, 1219--20 (10th Cir. 2008) (Henry, C.J.) (finding that the prosecution's publication of "photographs of bloodied, bullet-ridden bodies and blood-stained clothes" in a drug-conspiracy trial was "shocking[,] . . . likely to provoke an emotional response[, and] . . . . substantially more prejudicial than probative . . . . under Rule 403" but concluding that this was "[a] non-constitutional error" that was harmless "[b]ecause the remaining evidence against [the defendant] was so strong[ that] any potential error in admitting the photographs did not have a 'substantial influence on the outcome' or call the verdict into 'grave doubt'"); United States v. Thomas, 86 F.3d 647, 654--55 (7th Cir. 1996) (finding that the trial court's decision to admit evidence of third-party and anonymous threats "was an abuse of the district court's discretion under Rule 403" but concluding that "this error was, in the final analysis, harmless" because "[t]he prosecution in this case presented overwhelming evidence of both of the defendants' guilt" and because "the erroneous admission of threat evidence did not affect the jury's ultimate decision"); United States v. Shirley, 884 F.2d 1130 (9th Cir. 1989) (finding that the district court's decision to permit live testimony in a prison escape trial from the guard who had been shot in the head was harmless error because "[t]he jury was [already] aware that a guard had been shot in the head during the escape . . . . [and] may well have considered his injury even more serious" had they not seen him in person).
[27] ROA, p.00180, Jury Instr. # 14, at 1 (citing OUJI-Juv. # 3.11; 10A O.S.Supp.2010, Â§ 1-1-105(31)); see also 10A O.S.Supp.2017, Â§ 1-1-105(34).
[28] ROA, p.00242, State's Ex. 4B.
[29] Id., State's Ex. 4E.
[30] Id., State's Exs. 4A, 4C--4D, 4F--4G.
[31] Id., State's Exs. 4F, 4H.
[32] Id., State's Exs. 4I--4M.
[33] Id., State's Exs. 4I, 4K, 4M--4O.
[34] Id., State's Ex. 4N.
[35] Id., State's Ex. 4P.
[36] Id., State's Ex. 5, at 3--5.
[37] Id., State's Ex. 6.
[38] ROA, p.00239, Trial Tr. vol. 2, supra note 12, at 158:13--159:2, 160:21--162:6.
[39] Id. at 166:15--168:10.
[40] Id. at 186:4--188:17.
[41] Id. at 110:16--:18, 113:25--114:4.
[42] Id. at 118:19--:24; see also ROA, p.00242, State's Ex. 5, at 5 (showing the portion of the medical records that contains Dr. Stockett's "Impression & Recommendation," which lists "Problem # 1" as "CHILD PHYSICAL ABUSE" and "Problem # 2" as "CHILD PSYCHOLOGICAL ABUSE").
[43] ROA, p.00239, Trial Tr. vol. 2, supra note 12, at 198:18--202:22
[44] Id. at 204:11--:16
[45] ROA, p.00240, Trial Tr. vol. 3, supra note 12, at 14:20--17:4.
[46] Id. at 19:1--20:9.
[47] Id. at 17:1--:13.
[48] Id. at 51:11--:14, 56:10--58:14.
[49] Id. at 52:3--55:25.
[50] Id. at 70:16--:20.
[51] Id. at 143:5--:12.
[52] Id. at 214:6--:12, 221:3--:7, 228:8--:13.
[53] Id. at 214:22--215:24.
Â